IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TY CARTS, LEWIS GROVE, COLIN KRIEGER, BRANDEN RONALD, Individually and on behalf of all other similarly situated individuals, Plaintiffs, <br><br> v. <br><br> WINGS OVER HAPPY VALLEY MDF, LLC d/b/a WINGS OVER HAPPY VALLEY, STEVEN C. MOREIRA, and WINGS OVER HAPPY VALLEY, LLC, Defendants. | Case No. 4:17-CV-915 <br><br> Judge: Yvette Kane <br><br> Complaint filed: May 24, 2017 <br> Amended Complaint filed: February 12, 2018 <br><br><br> *Electronically Filed* |

**DEFENDANTS' BRIEF IN OPPOSITION
TO PLAINTIFFS' MOTION TO
CONDITIONALLY CERTIFY COLLECTIVE CLASS**

Philip K. Miles III, Esquire
Pa. I.D. No. 209425
pkmiles@mqblaw.com
McQUAIDE BLASKO, INC.
811 University Drive
State College, PA  16801
Phone:  (814) 238-4926

Dated:  October 15, 2018                    Attorneys for Defendants

# <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

*Table of Authorities*................................................................................................ *ii*

INTRODUCTION AND BACKGROUND ........................................................1

   A. Counterstatement of Issues ..........................................................................1

   B. Counterstatement of Facts.............................................................................2

   C. Procedural Posture........................................................................................11

ARGUMENT .....................................................................................................13

   A.   Conditional collective action admittedly sets a low bar, but Named
Plaintiffs still fail to clear it. .............................................................................13

   B.   Plaintiffs have not made a "modest factual showing" warranting
conditional certification because they have failed to produce evidence of
the existence of an illegal company tip-out policy or practice and to show
that all the proposed collective action members were subject to and
harmed by that policy. ......................................................................................15

     1.   Plaintiffs have failed to produce evidence of the existence of an
illegal company tip-out policy or practice. .................................................15

     2. Plaintiffs have failed to show that all prospective class members were
harmed by and subject to the employer's alleged illegal tip-out policy.
...................................................................................................................20

     3. There are specific timing issues precluding collective action
certification. ...............................................................................................24

CONCLUSION ..................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Genesis HealthCare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013) .................................................... 14

*Halle v. W. Penn Allegheny Health Sys.*, 842 F.3d 215 (3d Cir. 2016) .............................. 13, 14

*Postiglione v. Crossmark, Inc.*, No. 11-960, 2012 U.S. Dist. LEXIS 163615 (E.D. Pa. Nov. 14, 2012) ........................................................................................................................... 15, 17

*Ruehl v. Viacom, Inc.*, 500 F.3d 375 (3d Cir. 2007) .................................................................. 14

*Shiptoski v. SMG Grp., LLC*, No. 3:16-CV-1216, 2018 U.S. Dist. LEXIS 16687 (M.D. Pa. Jan. 31, 2018) .......................................................................................................................... passim

*Smith v. T-Mobile USA, Inc.*, 570 F.3d 1119 (9th Cir. 2009) ..................................................... 13

*Stone v. Troy Constr., LLC*, No. 3:14CV306, 2015 U.S. Dist. LEXIS 161009 (M.D. Pa. Dec. 1, 2015) ................................................................................................................................ 13, 26

*Viscomi v. Clubhouse Diner*, No. 13-4720, 2016 U.S. Dist. LEXIS 43375 (E.D. Pa. Mar. 30, 2016) ...................................................................................................................................... 26

*Woodard v. FedEx Freight E., Inc.*, 250 F.R.D. 178 (M.D. Pa. 2008) ....................................... 14

*Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012) .................................................... 14

**Statutes**

29 U.S.C. § 216(b).............................................................................................................. 13, 14

**Rules**

Fed. R. Civ. P. 23.................................................................................................................... 12

## INTRODUCTION AND BACKGROUND

Defendants did not maintain a common policy requiring delivery drivers from May 2014 through the present to contribute a portion of their tips to cooks. The record shows varying experiences among even the four named plaintiffs. Almost as many drivers as named plaintiffs claim there was no "tip out" requirement at all. The named plaintiffs' testimony is flatly contradicted by documents and testimony from other drivers and management. The plaintiffs further concede that they collectively have "no idea" what happened at Wings Over after February of 2017. Collective action requires that the class be "similarly situated" – a common practice affecting employee wages across the class. No such circumstances exist, so this Court should deny Plaintiffs' Motion to Conditionally Certify Collective Class.

### A. Counterstatement of Issues

The Fair Labor Standards Act (FLSA) sets an admittedly low bar for establishing that employees are "similarly situated" for a collective action. But, employees must still show a common policy affecting the proposed class. Should this Court deny a motion for collective action certification where the employer did not maintain a common policy similarly impacting employees' wages across the proposed class?

**Suggested answer: Yes.**

1

## B. Counterstatement of Facts[1]

WOHV MDF owned a restaurant doing business as Wings Over Happy Valley until November of 2017.[2] Steve Moreira owns WOHV MDF.[3] In 2017, WOHV purchased WOHV MDF's assets, and after extensive changes, began operating a Wings Over Happy Valley restaurant at the same location.[4] From May 2014 through the present, Wings Over employed over 200 delivery drivers.[5] Wings Over did not maintain a common policy or practice of requiring delivery drivers to share their tipped income.[6]

Several years ago, a delivery driver asked if drivers could share some of their tips with the cook staff to thank them.[7] Wings Over did not object to drivers giving a few dollars of their tips to managers to then give to the cooks, but did not require it.[8] Wings Over was concerned that managers handling tip money might inadvertently coerce drivers to contribute, and

---

[1]Defendants note that the Counterstatement of Facts is identical to the one appearing in their Brief in Opposition to Plaintiffs' Motion to Certify Class Pursuant to Fed. R. Civ. P. 23. Defendants reproduce the Counterstatement of Facts in full to comply with Local Rule 7.8(a) (prohibiting incorporation by reference) and for the convenience of the Court.

[2]ECF No. 51-1, ¶4.

[3]*Id.* at ¶3.

[4]*Id.* at ¶5; ECF No. 51-2, ¶4.

[5]ECF No. 49, p. 22.

[6]ECF No. 51-1, ¶¶7, 9-14; ECF No. 51-2, ¶¶7, 24.

[7]ECF No. 51-1, ¶6.

[8]ECF No. 51-1, ¶7.

wanted to emphasize that contributions were voluntary. In 2014 Wings Over placed a jar in the restaurant for the drivers to voluntarily share their tips with cooks, if they desired.[9] This eliminated contact between Wings Over management and delivery driver's tips.

Three former delivery drivers confirm that contributions to the tip jar were voluntary.[10] Moreira and GM Street, also swear that Wings Over never required delivery drivers to contribute any of their tips to the tip jar – or to otherwise share their tips.[11] From July, 28, 2014, through the date of the asset sale in November 2017, Wings Over maintained an Employee Handbook.[12] All of the Named Plaintiffs received the handbook, which provides: "Tips are considered part of your wages."[13] Wings Over faithfully followed this policy, and regarded tips as *drivers'* wages (not the cooks').[14]

---

[9]ECF No. 51-2, ¶¶9, 12; ECF No. 51-1, ¶8.
[10]ECF No. 51-5 – 51-7.
[11]ECF No. 51-2, ¶12-13, 24; ECF No. 51-1, ECF No. 51-1, ¶9, 25.
[12]ECF No. 51-9.
[13]ECF No. 49-2, pp. 63:25-67:8; ECF No. 49-4, pp. 74:19-77:19; ECF No. 49-1, pp. 36:24-39:4; ECF No. 49-3, pp. 12:16-13:10
[14]ECF No. 51-1, ¶13.

GM Street provided an orientation to many new hires.[15] He expressly told them they were not required to put any money in the tip jar and that it was voluntary.[16] He explained that Wings Over would never require them to contribute to the tip jar.[17]

The Named Plaintiffs were delivery drivers for Wings Over at various times from May 2014 through February 28, 2017.[18] They allege that through individual interactions with various people, they believed they were required to contribute varying amounts of their tips to the tip jar for the cooks.

Carts claimed that he became aware of the alleged tip-out policy from a manager named Noviello, "but I don't know if he told everyone the same thing because I wasn't there for it."[19] Carts admitted that he was not expressly told there was a tip sharing requirement, but contends it was "strongly implied."[20] Carts further testified that former-Plaintiff Jake Wilson took over as driver manager and never discussed the tip jar with

---

[15]ECF No. 51-2, ¶11.
[16]ECF No. 51-2, ¶12.
[17]*Id.*
[18]ECF No. 49-2, pp. 8:17-9:7; ECF No. 49-4, pp. 8:7-15, 58:24-59:3, 63:9-15; ECF No. 49-1, pp. 7:22-25, 8:18-9:2, 33:15-19; ECF No. 49-3, pp. 9:18-20, 41:9-12 .
[19]ECF No. 49-1, pp. 13:5:-10.
[20]ECF No. 49-1, pp. 11:11-13.

him.[21] Later, Carts became a manager and trained drivers.[22] As a manager, Carts testified that he personally trained *some* of the drivers to tip out, but did not tell *every* driver he trained about the supposed requirement.[23]

Plaintiff Grove claimed that former-Plaintiff Wilson told him about the alleged tip-out policy toward the end of Grove's first shift.[24] Grove admitted that he neither heard Wilson tell any other drivers they had to tip out nor other drivers say they were told to tip out.[25]  Kreiger testified that he "do[es]n't know what other drivers were told."[26] Ronald acknowledged that he did not witness the orientations for all the other delivery drivers, and therefore could not know what they were told regarding the alleged requirement to tip out.[27] Ronald further acknowledged that he would have no way of knowing whether there were other drivers who were not told about the tip out requirement, or how many.[28]

All of the Named Plaintiffs acknowledged it's possible that other drivers were either not told of the alleged tip out requirement, or did not

---

[21]ECF No. 49-1, pp. 14:16-20.
[22]ECF No. 49-4, pp. 21:4-14; ECF No. 49-1, pp. 30:5-17.
[23]ECF No. 49-1, pp. 31:5-13.
[24]ECF No. 49-2, pp. 10:15-21.
[25]ECF No. 49-2, pp. 11:11-18.
[26]ECF No. 49-3, pp. 51:6-9.
[27]ECF No. 49-4, pp. 13:11-14:6
[28]ECF No. 49-4, pp. 19:2-17.

comply with it. Ronald admitted that other drivers may not have put any money in the tip jar: "I'm sure that it happened."[29] Grove had "no idea" whether there were other drivers who were never told about the supposed requirement, or drivers who never put money in the tip jar – "It could be possible."[30] When asked if it was possible that there were drivers who did not tip-out during shifts when he was shift supervisor, Carts answered "Yes, it's possible."[31] Likewise, Krieger said, "I do not know. Anything is possible, right?"[32]

The testimony and pleadings of just the four Named Plaintiffs reveal disparity in the supposed tip out requirement. In the Amended Complaint, they alleged that Wings Over required drivers to tip out "approximately 8% of their tips."[33] Yet, *none* of the drivers testified to that. Ronald claims one manager told him 5-10%, and then another told him 10%.[34] Grove testified that former Plaintiff Wilson instructed him to put in "six to eight percent of our tip earnings."[35] Carts testified that it was 5-10% the entire

---

[29]ECF No. 49-4, pp. 53:5-9.
[30]ECF No. 49-2, pp. 12:8-11.
[31]ECF No. 49-1, pp. 47:14-17.
[32]ECF No. 49-3, pp. 40:21-24.
[33]ECF No. 24-2, ¶23.
[34]ECF No. 49-4, pp. 12:20-13:2, 22:5-18.
[35]ECF No. 49-2, pp. 10:15-21.

time.[36] Krieger testified that he was told 5-10% or "five to ten bucks," and the person who trained him did not state any set amount.[37] Krieger further testified that his actual practice was to base the amount of tips he shared with the cooks on how much of their job he "had to do."[38]

Wings Over did not track contributions to the tip jar.[39] Managers did not even know whether someone contributed, or how much.[40]

Half of the Named Plaintiffs claim they refused to tip out but were never disciplined. Grove claimed that "he became vocal about refusing to tip-out at the end of most shifts" but never faced discipline.[41] In fact, zero employees were ever disciplined for failing to abide by the alleged tip out mandate.[42] Krieger claims that he refused to tip out several times, and told the manager on duty it was "bullshit."[43] Despite his refusal, he never was disciplined.[44] Allegedly, the response varied from manager to manager. Some managers would "not really say anything," and "just let [him] go

---

[36]ECF No. 49-1, pp. 11:1-10, 15:6-11.
[37]ECF No. 49-3, pp. 14:1-15:24.
[38]ECF No. 49-3, pp. 31:2-3.
[39]ECF No. 51-2, ¶25; ECF No. 51-1, ¶11.
[40]ECF No. 49-1, pp. 33:6-14; ECF No. 49-3, pp. 33:20-22.
[41]Am. Int. Resp. No. 8; ECF No. 49-2, pp. 41:25-42:6 (in the interest of candor, in his deposition, Groves contradicted his own interrogatory response to claim he just complained but did not refuse).
[42]ECF No. 51-1, ¶26; ECF No. 51-2, ¶26; ECF No. 49-2, pp. 44:22-45:2.
[43]ECF No. 49-3, pp. 30: 16-33:19.
[44]*Id.*

about [his] day."[45] Krieger even claimed there was "really nothing" they could do.[46]

The sole document relied upon by Plaintiffs is a checklist (the "Wilson Checklist") that was drafted by former-Plaintiff Wilson.[47] Wilson voluntarily withdrew from the lawsuit after Wings Over filed counterclaims against him for lying on his timesheets.[48] The Wilson Checklist vaguely refers to "Mak[ing] sure all drivers tip-out." According to Wilson, he only gave this to two (maybe three) of the driver managers at Wings Over.[49] Wilson's employment ended in December 2016.[50]

Neither Moreira nor GM Street had ever seen the Wilson Checklist before this litigation.[51] Although GM Street had discussed modifying the checklist for closing managers, he never authorized any checklist drafted by Wilson (much less the Wilson Checklist).[52] The Wilson Checklist was not provided to other managers (beyond Wilson's alleged limited distribution),

---

[45]*Id*. at 56:18-57:1.
[46]*Id*.
[47]ECF No. 49-6, p.3; Wilson Dep. 104:3-105:9.
[48]ECF No. ___, Answer ¶¶76-100.
[49]ECF No. 51-4, pp. 107:14-118:23.
[50]*Id*., 116:3-11.
[51]ECF No. 51-2, ¶¶17-18; ECF No. 51-1, ¶¶15-16.
[52]ECF No. 51-2, ¶19.

and was not followed by other managers.[53] Instead, Wings Over utilized an official Closing Managers Duties checklist ("WOHV Checklist").[54] The WOHV Checklist states no tip out requirement, and was last modified on February 8, 2015.[55]

On September 26, 2016, Moreira received a letter from one of his former employees claiming the existence of an "illegal tip pool."[56] Moreira met with counsel to discuss this allegation. Thereafter, Moreira reiterated to drivers that putting money in the tip jar was voluntary.[57] Even former Plaintiff Wilson acknowledged that sharing tips was voluntary as of October 2016, and that all drivers were told it was voluntary.[58] An October 28, 2016 email further documents that tip sharing was voluntary, and that drivers knew it was voluntary.[59]

Although none of the Named Plaintiffs worked at Wings Over after February 2017, they seek class certification through the present. The Named Plaintiffs alleged "[u]pon information and belief" that the

---

[53]ECF No. 51-2, ¶¶18-22.
[54]ECF No. 51-2, ¶22; ECF No. 51-10.
[55]ECF No. 51-2, ¶23; ECF No. 51-10.
[56]ECF No. 51-11.
[57]ECF No. 51-1, ¶¶22-25.
[58]ECF No. 51-4, pp.  35:19-39:23.
[59]ECF No. 51-12.

defendants "continue[d] to require" the unlawful tip pooling as of January 30, 2018.[60] However, in depositions, *every* Named Plaintiff denied having any reason to believe this allegation:

- Ronald - When asked the basis for this allegation, repeatedly said, "I do not know."[61]

- Grove - "I have no idea what drivers were told after I left."[62] And when asked if drivers continued to put money in the tip jar after he left in January of 2017, he replied "I have no – no idea, no knowledge of anything."[63] "I know nothing about practices beyond the last date that I was at the restaurant working."[64]

- Krieger – Confessed that he had "no idea" what the tip policy was after he left in December 2016.[65]

- Carts – similarly testified that he had "[n]o idea" whether drivers who started after May 7th, 2016 were told about a tip out requirement because, "I wasn't there anymore."[66]

When new owners began operating the new Wings Over restaurant following the asset sale in November 2017, they adopted their own policies and procedures. Per the new Team Member Handbook given to all

---

[60]ECF No. 24-2, ¶23.
[61]ECF No. 49-4, pp. 66:11-69:11.
[62]ECF No. 49-2, pp. 57:1-7.
[63]*Id.* at 57:11-15.
[64]*Id.* at 59:22-60:7.
[65]ECF No. 49-3, pp. 43:16-44:1.
[66]ECF No. 49-1, pp. 33:20-34:1.

employees, "Tips are not pooled or shared."[67] GM Street has further

testified that Wings Over enforces the policy as written.[68].

The record reflects the following:

| May 24, 2014 | Purported start date for the sought after class. |
|---|---|
| July 28, 2014 | Wings Over adopts an employee handbook expressly stating "Tips are considered part of your wages." |
| October 2016 | Former plaintiff Wilson acknowledges tip sharing is voluntary; email expressly states that it is voluntary. |
| February 2017 | Latest date any Named Plaintiff was employed by Wings Over; they have "no idea" what happened after their respective leave dates. |
| November 2017 | New ownership purchases assets and implements new Team Member Handbook expressly stating that "Tips are not pooled or shared." |
| October 2018 (through present) | End date for sought after class. |

## C. Procedural Posture

The parties conducted discovery on the issue of class certification,

including interrogatories, requests for production of documents, and

depositions of all of the named plaintiffs, and former-plaintiff (and Driver

Manager) Jake Wilson. On October 1, 2018, Plaintiffs sought certification of

---

[67]ECF No. 51-3, ¶8; ECF No. 51-8.
[68]ECF No. 51-3, ¶8.

a class for their Pennsylvania state law claims under Fed. R. Civ. P. 23.[69] At

the same time, Plaintiffs also sought conditional certification of a collective

action under the Fair Labor Standards Act.[70] Defendants oppose both

motions for the reasons set forth in their briefs, filed concurrently on

October 15, 2018.

---

[69]ECF No. 47; ECF No. 49.
[70]ECF No. 48; ECF No. 50.

# ARGUMENT

## A. Conditional collective action admittedly sets a low bar, but Named Plaintiffs still fail to clear it.

The FLSA permits an employee alleging his or her employer committed a violation of the law to sue on behalf of "himself . . . and other employees similarly situated."[71] This is known as a collective action. Unlike a class action under Federal Rule of Civil Procedure No. 23, an FLSA collective action requires the "affirmative participation of opt-in plaintiffs."[72] A plaintiff looking to proceed on an FLSA collective action must satisfy two requirements: (1) the named plaintiff must be similarly situated to the proposed collective action members; and (2) the proposed collective action members must file a written notice of consent with the court where the action is brought.[73] Once a named plaintiff files a complaint containing FLSA collective action allegations, the court must determine whether the

---

[71]29 U.S.C. § 216(b).

[72]*Halle v. W. Penn Allegheny Health Sys.*, 842 F.3d 215, 224 (3d Cir. 2016) (citing *Smith v. T-Mobile USA, Inc.*, 570 F.3d 1119, 1121 (9th Cir. 2009)).

[73]*Shiptoski v. SMG Grp., LLC*, No. 3:16-CV-1216, 2018 U.S. Dist. LEXIS 16687, at *4 (M.D. Pa. Jan. 31, 2018); *Stone v. Troy Constr., LLC,* No. 3:14CV306, 2015 U.S. Dist. LEXIS 161009, at *2 (M.D. Pa. Dec. 1, 2015).

proposed collective action members are "similarly situated," as required by 29 U.S.C. § 216(b).[74]

The FLSA does not define what it means to be "similarly situated."[75] Nonetheless, courts in the Third Circuit follow a two-step framework to make this determination.[76] Relevant here, the first step of the framework— "conditional certification"—requires the named plaintiff to make a "modest factual showing" of a connection between the way that his or her employer's alleged policy affected him or her and the way the employer's policy affected the proposed collective action members.[77] A "modest factual showing" requires something more than mere speculation.[78] Defendants acknowledge that the burden at this stage is lenient and "'usually results in conditional certification.'"[79] Even so, as demonstrated below, courts in the Third Circuit should and have denied conditional certification under appropriate circumstances—like those involved here.

---

[74]*Halle*, 842 F.3d at 224.

[75]*Shiptoski*, 2018 U.S. Dist. LEXIS 16687, at *4 (citing *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 389 n.17 (3d Cir. 2007)).

[76]*Halle*, 842 F.3d at 224 (citing *Genesis HealthCare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013)).

[77]*Id.* (citing *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)).

[78]*Id.*

[79]*Shiptoski*, 2018 U.S. Dist. LEXIS 16687, at *6 (quoting *Woodard v. FedEx Freight E., Inc.*, 250 F.R.D. 178, 191 (M.D. Pa. 2008)).

**B. Plaintiffs have not made a "modest factual showing" warranting conditional certification because they have failed to produce evidence of the existence of an illegal company tip-out policy or practice and to show that all the proposed collective action members were subject to and harmed by that policy.**

*1. Plaintiffs have failed to produce evidence of the existence of an illegal company tip-out policy or practice.*

Plaintiffs' motion to conditionally certify a collective class should be denied because there is no company-wide policy or plan, and the disparity among the named plaintiffs' testimony shows that any violation of the FLSA was caused by individual supervisors, not any common policy or practice.[80] In *Postiglione v. Crossmark*, the plaintiffs alleged their employer violated the FLSA by not paying its employees for overtime work.[81] The plaintiffs sought certification of a collective action.[82] The Court held that the proposed class did not meet the "similarly situated" requirements of § 216(b), and denied the plaintiffs' motion for conditional class certification.[83]

With respect to the named plaintiffs' claim about nonpayment for administrative work, the Court explained that the "disparity of the claims among the named plaintiffs, the deposition testimony of the employees,

---

[80]*Postiglione v. Crossmark, Inc.*, No. 11-960, 2012 U.S. Dist. LEXIS 163615, at *18-19 (E.D. Pa. Nov. 14, 2012).
[81]*Id.* at *3.
[82]*Id.* at *1-2.
[83]*Id.* at *24-25.

and the testimony of the one supervisor deposed ma[d]e it more likely that any illegal overtime policies were implemented by individual supervisors."[84] Thus, rather than demonstrating the existence of a company policy, the Court found that the named plaintiffs only demonstrated the lack of a common policy.[85] Turning to the named plaintiffs' claim against the employer for paying the employees for "budgeted" project time rather than actual time spent on site, the Court concluded that "the disparity in the named plaintiffs' testimony demonstrates that any illegal plans or policies that existed were instituted by individual supervisors."[86]

In reaching this conclusion, the Court relied upon the conflicting depositional testimony of two of the plaintiffs, as well as an affirmation submitted by one of their supervisors.[87] Specifically, one of the plaintiffs testified at her deposition that she was never told she could not exceed the estimated project time, but rather, she just assumed she could not exceed the time and therefore always misreported her time worked.[88] The other plaintiff testified that she was in fact paid for all the time she worked in the

---

[84]*Id.* at *17.
[85]*Id.*
[86]*Id.* at *18-19.
[87]*Id.* at *18-19.
[88]*Id.* at *18.

store.[89] Lastly, the supervisor testified in her affirmation that she always instructed employees to record the full amount of time that they worked.[90] Based on all of these findings, the Court stated that the named plaintiffs had not shown that the proposed class members "[we]re similarly situated to the named plaintiffs with regard to any of their claims."[91]

Plaintiffs here have failed to make even a "modest factual showing" because they have not produced evidence establishing the existence of a common tip-out policy. Rather, as in *Postiglione*, Plaintiffs' evidence here suggests at most that the alleged tip-out policy was instituted by a handful of individual managers. First, both Defendant Moreira and General Manager Jonathan Street asserted that Wings Over never required delivery drivers to tip-out.[92] Three drivers have submitted sworn affidavits confirming that tip out was *not* required.[93] Wings Over's Employee Handbook, which all employees (including Plaintiffs) received, expressly stated that "Tips are considered part of your (the drivers') wages."[94]

---

[89]*Id.*
[90]*Id.*
[91]*Id.* at *22.
[92]*See* ECF No. 51-1, ¶¶9, 25; ECF No. 51-2, ¶¶12-13, 24.
[93]ECF No. 51-5-51-7.
[94]ECF No. 51-5.

Despite the non-existence of an express policy requiring tip pooling, Plaintiffs claim they learned of the alleged tip-out policy through individual interactions with various managers. For example, Plaintiff Carts testified that a manager named Noviello "strongly implied" there was a tip-out policy.[95] Plaintiff Grove testified that former-Plaintiff Jake Wilson told him about it.[96] Plaintiff Krieger also testified that former-Plaintiff Wilson told him about the tip-out policy.[97] He also said that a manager named Stapelton told him about the tip-out policy.[98] Lastly, Plaintiff Ronald testified that a driver manager named Jesse and manager named Noveillo told him about the tip-out policy.[99]

Plaintiffs' testimony identifies only a handful of managers who allegedly required drivers to tip out. In contrast to these few managers, General Manager Jonathan Street, who provided introduction and orientation to many new hires, testified that he expressly told new hires that they were *not* required to tip out and that tipping out was entirely

---

[95]ECF No. 49-1, 11:4 -18.
[96]ECF No. 49-2, 10:15-21.
[97]ECF No. 49-3, 13:23-14:7.
[98]*Id.* at 14:25-15:7.
[99]ECF No. 49-4 pp. 12:17-23, 17:2-6.

voluntary.[100] Even Plaintiff Carts admitted that, when he became a manager and started training drivers, he only told *some* of them about the alleged tip out requirement.[101]

The existence of a common tip-out policy is also undermined by the fact that no employees were ever disciplined for noncompliance. Plaintiff Krieger testified that he refused to tip out several times but was never disciplined.[102] Krieger said that the response for not tipping out depended on the manager.[103] When describing how "less aggressive managers" would respond to his refusal to tip out, Kreiger said "they just couldn't say anything," and that they "[j]ust let you go about your day."[104] At the least, Plaintiff Kreiger's testimony confirms that the alleged tip-out policy was nothing more than a policy or practice possibly implemented by a handful of managers.

The tip pooling policy in this case was allegedly implemented by individual managers, as opposed to Defendants. Even accepting the Named Plaintiffs' version of events, not all of the proposed collective action

---

[100]ECF No. 51-2, ¶12.
[101]ECF No. 49-1, pp. 31:5-13.
[102]ECF No. 49-3, pp. 30:16-33:19.
[103]*Id.* at 56:3-11.
[104]*Id.* at 56:18-57:1.

members would have been subjected to and affected by the alleged policy.

Sworn declarations from the General Manager, three drivers, Defendant

Moreira, and multiple employee handbooks all show that Wings Over did

not maintain a companywide tip pooling requirement. Accordingly,

Plaintiffs have failed to make a "modest factual showing" warranting

conditional certification.

   *2. Plaintiffs have failed to show that all prospective class members were*
   *harmed by and subject to the employer's alleged illegal tip-out policy.*

To make a "modest factual showing" sufficient for a grant of

conditional certification, plaintiffs must provide evidence that all

prospective class members were harmed by the employer's alleged practice

or policy; and, the declarations and other evidence must show that the

proposed collective action members were subject to the same policy or

practice.[105] In *Shiptoski*, the initial plaintiff filed a complaint on behalf of

herself and other similarly situated employees. In her complaint, the

plaintiff alleged that she was employed by the defendant as a store

manager and that she often worked over forty (40) hours per week.[106] The

plaintiff alleged that despite working more than forty (40) hours per week,

---

[105]*Shiptoski*, 2018 U.S. Dist. LEXIS 16687, at *6-8 (M.D. Pa. Jan. 31, 2018).
[106]*Id.* at *1-2.

the defendant did not pay her overtime—in violation of both the FLSA and PMWA.[107]

Four other individuals consented to becoming party-plaintiffs.[108] The plaintiffs then requested the court to conditionally certify an FLSA collective action that included all individuals employed by the defendant within the last three (3) years as salaried store managers.[109] The court held that the plaintiff made the "modest factual showing" required to have her motion for conditional certification granted.[110]

The court explained that the plaintiffs met the "modest factual showing" standard because they provided evidence—including declarations from the initial plaintiff and four other store managers, an accommodation review form used by the defendant, the store manager job description, the defendant's employee handbook, and the defendant's policy and procedure manual—showing that all the proposed collective action members "were harmed by [the defendant's] alleged practice of misclassifying all salaried store managers as overtime exempt."[111]

---

[107]*Id.* at *2.
[108]*Id.*
[109]*Id.* at *2-3.
[110]*Id.* at *6.
[111]*Id.* at *6-8.

Specifically, the court found that the declarations each contended that the proposed collective actions members worked for the defendant as salaried store managers, regularly worked more than forty (40) hours per week, were not paid overtime, primarily performed non-managerial work, and worked alone or with one other store employee.[112] When coupled with the other evidence, the court found that the plaintiffs demonstrated a factual connection between the way the defendant's policy and practice affected the named plaintiffs and the way it affected other employees.[113] Accordingly, the court recommended that the named plaintiffs' motion for conditional certification be granted.[114]

This Court should deny Plaintiffs' Motion to Conditionally Certify Collective Class because unlike the plaintiffs in *Shiptoski*, Plaintiffs here have not produce evidence showing that all the proposed collective action members were subjected to and harmed by Wings Over's alleged tip-out policy. The crux of the court's holding in *Shiptoski* was that all of the named plaintiffs' evidence (*i.e.*, the defendant's job description for store managers, accommodation review form describing the tasks regularly performed by

---

[112]*Id.* at *7-8.
[113]*Id.*
[114]*Id.* at *10.

store managers, employee handbook, and policy and procedure manual),

taken as a whole, demonstrated that a connection between the way the

employer's alleged policy affected the named plaintiffs and the way it

affected the proposed collective action members existed.[115] Plaintiffs here

have not produced similar evidence.

To begin with, at least two of the named Plaintiffs testified at their

depositions that not all drivers were told about the alleged tip-out policy.[116]

Further, in addition to the testimony of Plaintiff Grove, affidavits

submitted by Defendant Moreira and Jonathan Street, a former general

manager at all times relevant to this suit, indicate that no drivers were ever

disciplined for failing to abide by the alleged tip-out policy.[117] Three more

affidavits from delivery drivers confirm that they were not required to tip

out.[118] Therefore, in contrast to *Shiptoski*, because Plaintiffs have not

produce evidence showing that all the proposed collective action members

were told about or required to comply with the alleged tip-out policy,

Plaintiffs have not shown that all proposed collective action members were

---

[115]*Shiptoski*, 2018 U.S. Dist. LEXIS 16687, at *7-8.
[116]ECF No. 49-1, pp. 31:5-13; ECF No. 49-2, 11:11-18.
[117]ECF No. 49-2, pp. 44:22-45:2; ECF No. 51-1, ¶26; ECF No. 51-2, ¶26.
[118]ECF No. 51-5-51-7.

harmed by and subjected to the same policy or practice as them.

Accordingly, conditional certification is not warranted.

*3. There are specific timing issues precluding collective action certification.*

Plaintiffs generally fail to distinguish between the varying circumstances across different time periods. Although they have pled that Wings Over continued to operate an illegal tip pool[119], all four named plaintiffs astonishingly confessed that they had no reason whatsooever to believe that allegation:

- Ronald - When asked the basis for this allegation, repeatedly said, "I do not know.";[120]

- Grove - "I have no idea what drivers were told after I left."[121] And when asked if drivers continued to put money in the tip jar after he left in January of 2017, he replied "I have no – no idea, no knowledge of anything."[122] "I know nothing about practices beyond the last date that I was at the restaurant working."[123];

- Kreiger –confessed that he had "no idea" what the tip policy was after he left in December 2016.[124]; and

- Carts – similarly testified that he had "[n]o idea" whether drivers who started after May 7th, 2016 were told about a tip out requirement because, "I wasn't there anymore." When asked how he would feel if

---

[119]ECF No. 24-2, ¶23.
[120]ECF No. 49-4, pp. 66:11-69:11.
[121]ECF No.  49-2, pp. 57:1-7.
[122]*Id.* at 57:11-15.
[123]*Id.* at 59:22-60:7.
[124]ECF No. 49-3, pp. 43:16-44:1.

someone accused him of breaking the law in a federal lawsuit despite having "no idea" whether it was true, his attorney objected and told him not to answer.[125]

On what basis can they now seek to certify a collective action beyond February of 2017?

While the plaintiffs have "no idea" what happened, other people do. New owners purchased the assets of Defendant WOHV MDF and made significant changes to the restaurant.[126] The new owners implemented a new Team Member Handbook that expressly states "Tips are not pooled or shared."[127] The new Wings Over restaurant, like the old one, did not require drivers to contribute tips to the cooks.[128] It would also be inappropriate to force the new Wings Over restaurant to post a notice of collective action for alleged violations by the prior restaurant.

Even earlier than the November 2017 asset sale, in October 2016, Plaintiffs' own star witness and former lead plaintiff, Wilson, testified that the alleged tip out policy was voluntary.[129] Notably, this coincides with the statute of limitations under the FLSA. Plaintiffs ask this Court to just

---

[125]ECF No. 49-1, 33:20-34:1; 42:17-45:10.
[126]ECF No. 51-3, ¶¶5-7.
[127]ECF No. 51-3, ¶8; ECF No. 51-8.
[128]ECF No. 51-2 and 51-3.
[129]ECF No. 51-4, pp. 35:19-39:23

"assume" a three-year statute of limitations for "willful violations" because an unpublished Eastern District of Pennsylvania decision held that the plaintiffs in that case had "adequately pled the existence of willful violations."[130] Here, the drivers have pled the words "willful violation," but have not actually plead the existence of willful violations. They have likewise failed to identify any evidence in the fairly extensive discovery conducted to-date of a willful violation. "[A] simple allegation of willful misconduct is insufficient to extend the statute of limitations from two to three years."[131] Wings Over therefore respectfully asks the Court to factor in only the two-year statute of limitations in its decision.

The Plaintiffs simply fail to address the differences over time – their own witnesses' (and former-plaintiff's) testimony that tipping out was voluntary as of October 2016, the lack of any knowledge after February 2017, and the new written manual as of November 2017. Certifying a collective action at this point would be futile, because there was no common unlawful tip out policy across the past two years.

---

[130]*Viscomi v. Clubhouse Diner*, No. 13-4720, 2016 U.S. Dist. LEXIS 43375, at *16, n.2 (E.D. Pa. Mar. 30, 2016).
[131]*Stone v. Troy Constr., LLC*, No. 3:14cv306, 2018 U.S. Dist. LEXIS 50232, at *8 (M.D. Pa. Mar. 27, 2018) (in the context of summary judgment).

## CONCLUSION

At the initial conditional certification stage, the members of a collective action must be "similarly situated." Even among the four named Plaintiffs, the drivers claim an alleged unlawful tip out policy existed based on individual conversations with just a few managers. Their experience was flatly contradicted by three other drivers, the general manager, and the former owner. Plaintiffs also ignore significant differences over time, including an admitted lack of knowledge about anything that happened after February 2017, and their own former co-plaintiff acknowledging that tip out was voluntary from October 2016 on. Collective action certification is not appropriate here due to the lack of a common employment policy, affecting drivers across the sought after class, in place across the past two (or even three) years. This Court should therefore deny Plaintiffs' Motion to Conditionally Certify the Collective Class.

Respectfully submitted,

McQUAIDE BLASKO, INC.

Dated:  October 15, 2018        By: */s/Philip K. Miles*
                                Philip K. Miles III, Esquire
                                Pa. I.D. No. 209425
                                pkmiles@mqblaw.com
                                811 University Drive
                                State College, PA  16801
                                Phone:  (814) 238-4926
                                Fax: (814) 238-9624

                                Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TY CARTS, LEWIS GROVE, COLIN KRIEGER, BRANDEN RONALD, Individually and on behalf of all other similarly situated individuals, Plaintiffs, <br><br> v. <br><br> WINGS OVER HAPPY VALLEY MDF, LLC d/b/a WINGS OVER HAPPY VALLEY, STEVEN C. MOREIRA, and WINGS OVER HAPPY VALLEY, LLC, <br> Defendants. | Case No. 4:17-CV-915 <br><br> Judge: Yvette Kane <br><br> Complaint filed: May 24, 2017 <br> Amended Complaint filed: February 12, 2018 <br><br><br> *Electronically Filed* |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **Defendants' Brief in Opposition to Plaintiffs' Motion to Conditionally Certify Collective Class** in the above-captioned matter was served via ECF this 15th day of October, 2018, to all parties/counsel of record as follows:

David S. Gaines, Jr., Esquire
Miller, Kistler, & Campbell
720 South Atherton Street, Suite 201
State College, PA 16801
dgaines@mkclaw.com

McQUAIDE BLASKO, INC.

By: */s/Philip K. Miles*
Philip K. Miles III, Esquire
Pa. I.D. No. 209425
pkmiles@mqblaw.com
811 University Drive
State College, PA  16801
Phone:  (814) 238-4926
Attorneys for Defendants

29