# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACOB WILSON, et al., individually and on behalf of all other similarly situated individuals, | : : : | |
| Plaintiffs | : : | No. 4:17-cv-00915-YK |
| v. | : : | (Judge Kane) |
| WINGS OVER HAPPY VALLY MDF, LLC d/b/a WINGS OVER HAPPY VALLEY, et al., | : : : : | |
| Defendants | : | |

**MEMORANDUM**

Before the Court are Plaintiffs' motion to certify a class pursuant to Federal Rule of Civil Procedure 23 (Doc. No. 47) and Plaintiffs' motion to conditionally certify a collective class (Doc. No. 48). For the reasons provided herein, the Court will deny Plaintiffs' motion to certify a class pursuant to Rule 23 and grant Plaintiffs' motion to conditionally certify a collective class.[1]

## I. BACKGROUND

### A. Procedural Background

Plaintiffs commenced this action by filing a complaint in this Court on May 24, 2017, seeking to represent a class of workers alleging that Defendants Wings Over Happy Valley MDF, LLC and Steven C. Moreira violated provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., and various state wage and hour laws. (Doc. No. 1.) Plaintiffs subsequently filed a motion for leave to file an amended complaint removing Plaintiff Jacob

---

[1] Plaintiffs have brought claims for violations of both state and federal law. (Doc. No. 24-2.) They seek to certify their state law claims as a class action under Rule 23 (Doc. No. 47) and seek to certify their federal claims under the FLSA as a collective action (Doc. No. 48).

Wilson and adding Wings Over Happy Valley, LLC as a defendant (Doc. No. 24), which was granted on February 12, 2019 (Doc. No. 27).[2] The Court then authorized limited discovery for purposes of briefing the issue of class certification. (Doc. No. 41.) Plaintiffs' counsel filed the pending motion to certify a class pursuant to Fed. R. Civ. P. 23 (Doc. No. 47) and motion to conditionally certify a collective class under the FLSA (Doc. No. 48) on October 1, 2018. The motions have been fully briefed (Doc. Nos. 49-57, 63) and are ripe for disposition.[3]

### B. Factual Background[4]

Plaintiffs' claims stem from Plaintiffs' allegation that Defendants operated an illegal tip pool for delivery drivers at Defendants' restaurant. (Doc. No. 24-2 ¶¶ 16-27.) Specifically, Plaintiffs argue that the FLSA and Pennsylvania Minimum Wage Act require employers to pay employees a minimum wage of $7.25 per hour, with the exception of tipped employees, who may be paid at a rate below the minimum wage "so long as 'all tips received by such employee have been retained by the employee.'" (Id. ¶¶ 16-17) (citing 29 U.S.C. § 203(m); 43 P.S. § 333.103(d)). Plaintiffs allege that Defendants routinely required all delivery drivers to provide a portion of their tips to kitchen workers at the restaurant. (Id. ¶ 23.) Plaintiffs' note that "Defendants' kitchen workers are not 'employees who customarily and regularly receive tips'" and argue that,

---

[2] Defendants Wings Over Happy Valley MDF, LLC and Steven Moreira sold the assets of the Wings Over Happy Valley restaurant to Wings Over Happy Valley, LLC subsequent to the commencement of this case. (Doc. No. 24-1.)

[3] Following the close of briefing in this matter, the Third Circuit Court of Appeals published a precedential opinion addressing the requirements for class certification under Rule 23. See Reinig v. RBS Citizens, N.A., 912 F.3d 115 (2018). Defendants requested leave to file a supplemental brief addressing the applicability of Reinig to the instant case (Doc. No. 58) which the Court granted (Doc. No. 61).

[4] The following factual background is taken from the allegations of Plaintiffs' first amended complaint. (Doc. No. 24-2.)

therefore, any practice that required delivery drivers to share tips with kitchen workers operated in violation of the FLSA and corollary state law. (Id. ¶¶ 19, 25, 50, 56.)

## II. LEGAL STANDARD

### A.   Class Certification Pursuant to Rule 23

The requirements for certification of a class action are found in Rule 23 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 23. In order to certify a class under Rule 23, every class action must meet the prerequisites of Rule 23(a) in addition to the requirements of Rule 23(b)(1), Rule 23(b)(2), or Rule 23(b)(3). See id. Specifically, under Rule 23(a), a class action may be maintained if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

See Fed. R. Civ. P. 23(a). Rule 23(b)(3) further requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[5] See Fed. R. Civ. P. 23(b)(3). The party seeking certification must establish each element of Rule 23 by a preponderance of the evidence. See In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 307 (3d Cir. 2008).

In order to determine whether the party seeking certification has satisfied its burden with respect to Rule 23, a district court must conduct a "rigorous analysis" of the evidence and arguments put forth. See id. at 316 (quoting Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S.

---

[5] Plaintiffs are seeking certification under Rule 23(b)(3). (Doc. No. 49 at 22-27.)

147, 161 (1982)). Although determinations of issues on the merits would normally be reviewed at a later stage of litigation, a court "must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits — including disputes touching on elements of the cause of action." See Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 590-591 (3d Cir. 2012) (citing Hydrogen Peroxide, 552 F. 3d at 307).

### B. Certification of a Collective Action Under the FLSA

Under the FLSA, a collective action may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." See 29 U.S.C. § 216(b). "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. A collective action under the FLSA is "fundamentally different" from a class action under Rule 23. See Halle v. West Penn Allegheny Health Sys., 842 F.3d 215, 222-23 (3d Cir. 2016) (citing Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 74 (2013)). Within the Third Circuit, courts utilize a two-step process for certification of collective actions under the FLSA. See Zavala v. Wal-Mart Stores, Inc., 691 F.3d 527, 536 (3d Cir. 2012).

At the first step, conditional certification, a plaintiff must make a "modest factual showing" to support a "factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." See Zavala, 691 F.3d at 536 n.4 (citing Symczyk v. Genesis Healthcare Corp., 656 F.3d 189) (3d Cir. 2011), rev'd on other grounds, Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66 (2013)). "The sole consequence of conditional certification is the sending of court-approved written notice to employees." Genesis Healthcare, 569 U.S. at 75 (citing Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 171-172 (1989)). Certification of a collective class is not final until the

second step, at which time the Court must determine whether plaintiffs who have opted to join the action following conditional certification are similarly situated to the named plaintiffs under the FLSA. See Halle, 842 F.3d at 226.

## III.   DISCUSSION

### A.   Motion to Certify Class Pursuant to Rule 23

#### 1.   Legal Standard

##### a.   Numerosity

The numerosity requirement of Rule 23(a)(1) is satisfied if "the class is so numerous that joinder of all members is impracticable." See Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

##### b.   Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." See Fed. R. Civ. P. 23(a)(2). "A putative class satisfies Rule 23(a)'s commonality requirement if 'the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" Rodriguez v. Nat'l City Bank, 726 F.3d 372, 382 (3d Cir. 2013) (quoting Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)). Although "that bar is not a high one," see id., named plaintiffs nonetheless bear the burden of demonstrating that the "defendant's conduct was common to all of the class members." Id. (citing Sullivan v. DB Invs., Inc., 667 F.3d 273, 299 (3d Cir. 2011)). Stated another way, commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) (citing Falcon, 457 U.S. at 157).

### c. Typicality

The typicality requirement of Rule 23(a)(3) considers whether the "claims or defenses of the representative parties are typical of the claims or defenses of the class." See Fed. R. Civ. P. 23(a)(3). Within the Third Circuit, this requirement has a "low threshold." See In re NFL Players Concussion Injury Litig., 821 F.3d 410, 428 (3d Cir. 2016) (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F. 3d 154, 182-83 (3d Cir. 2001)). Accordingly, "[e]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories[] or where the claim arises from the same practice or course of conduct." See id. (quoting In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F. 3d 283, 311 (3d Cir. 1998)).

### d. Adequacy

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." See Fed. R. Civ. P. 23(a)(4). In order to determine whether this requirement has been met, the Court must consider: "(1) whether the representatives' interest conflict with those of the class and (2) whether the class attorney is capable of representing the class." See Newton, 259 F.3d at 185 (citing Falcon, 457 U.S. at 157). In the Third Circuit, defendants have the burden of proving the inadequacy of class counsel. See Lewis v. Curtis, 671 F.2d 779, 788 (3d Cir. 1982).

### e. Rule 23(b)(3)

As noted supra, the Court must also consider whether the proposed class "satisf[ies] at least one of the three requirements listed in Rule 23(b)." See Dukes, 564 U.S. at 345. In this case, Plaintiffs seek certification pursuant to Rule 23(b)(3), which requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting

6

only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." See Fed. R. Civ. P. 23(b)(3).

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." See Hydrogen Peroxide, 552 F.3d at 311 (quoting Amchem Prods. v. Windsor, 521 U.S. 591, 623 (1997)). However, the predominance requirement "imposes a more rigorous obligation upon a reviewing court to ensure that issues common to the class predominate over those affecting only individual class members." See Sullivan, 667 F.3d at 297. "[A]t the class certification stage, a district court must determine whether the essential elements of the claims brought by a putative class are 'capable of proof at trial through evidence that is common to the class rather than individual to its members.'" See Gonzalez v. Owens Corning, 885 F.3d 186, 195 (3d Cir. 2018) (quoting Hydrogen Peroxide, 552 F.3d at 311-12). Class certification is unsuitable if "proof of the essential elements of the cause of action requires individual treatment." See Newton, 259 F.3d at 172.

The superiority inquiry requires the Court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." See In re Cmty. of N. Va. Mortg. Lending Practices Litig., 795 F. 3d 380, 409 (3d Cir. 2015) (quoting In re Cmty. Bank of N. Va., 418 F.3d 277, 309 (3d Cir. 2005)). The factors relevant to this analysis include: "the class members' interests in individually controlling the prosecution or defense of separate actions"; "the extent and nature of any litigation concerning the controversy already begun by or against class members"; "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and "the likely difficulties in managing a class action." See Fed. R. Civ. P. 23(b)(3).

### 2. Parties' Arguments

Plaintiffs argue that they "readily traverse the legal thresholds warranting class certification." (Doc. No. 49 at 12.) Plaintiffs claim the class is sufficiently numerous because "Defendants have confirmed that the number of [d]elivery [d]rivers at the Restaurant exceeds 200 individuals." (Id. at 15.) Plaintiffs contend that commonality is satisfied because Defendants: "(i) applied the same compensation policies to each member of the class of [d]elivery [d]rivers, (ii) paid each [d]elivery [d]river less than the minimum wage, and (iii) implemented the same invalid tip pool to all [d]elivery [d]rivers." (Id. at 16.) As to typicality, Plaintiffs assert that "Plaintiffs and the absentee class members all assert the same claim—Defendants' violation of the PMWA and WPCL—based on Defendants' common conduct of subjecting [d]elivery [d]rivers to an invalid tip pool." (Id. at 18-19.) Plaintiffs further argue that "the interests of Plaintiffs are aligned with the class and not in conflict" (id. at 21), "common issues predominate" because "Defendants forced their [d]elivery [d]rivers to participate in an invalid tip pooling arrangement" (id. at 24), and that a class action adjudication is superior in this case because "class members would probably lack the incentive to bring individual suits against [Defendants]" and "[class treatment] would promote judicial economy" (id. at 26.)

Defendants primarily argue that the Court should deny Rule 23 certification because Plaintiffs cannot establish commonality and predominance. (Doc. No. 54 at 15-28.) Specifically, Defendants argue that Plaintiffs cannot establish: (1) that delivery drivers were uniformly notified about the alleged tip-out policy (id. at 18); (2) that there was a consistent amount that delivery drivers were allegedly required to tip-out (id. at 20); (3) that there was enforcement of the alleged policy (id. at 23); and (4) that the alleged policy remained consistent

across the entire class period (id. at 25).[6] Defendants further assert that the only written document that Plaintiffs contend supports the existence of a universal policy "was not widely distributed or followed by other managers." (Id. at 23.) In support of their arguments, Defendants point to various evidence in the record, including affidavits from Defendant Moreira and General Manager Jonathan Street (id. at 5) (citing Doc. Nos. 51-1 ¶¶ 9, 25, 51-2 ¶¶ 12-13, 24) and affidavits from three other delivery drivers who stated that they were not required to tip-out (id. at 5) (citing Doc. Nos. 51-5-51-7).

In response to Defendants' arguments about the adequacy of Plaintiffs' evidence and need for individualized inquiries, Plaintiffs argue that the Court should simply ignore contradictory evidence as biased or irrelevant. (Doc. No. 57 at 5-14.) Plaintiffs additionally insist that there are no timing issues at bar, or, if a policy change occurred within the proposed class period, "the proper procedure is to limit the conditional class." (Id. at 17.)

### 3. Whether the Motion Should Be Granted

"Class certification is proper only if the district court is satisfied, 'after rigorous analysis,' that the plaintiffs 'established each element of Rule 23 by a preponderance of the evidence.'" Reinig v. RBS Citizens, N.A., 912 F.3d 115, 125 (3d Cir. 2018) (quoting Marcus, 687 F.3d at 591). Upon review of the record, the parties' arguments, and the applicable law, the Court finds that class certification pursuant to Rule 23 is not warranted in this case. As an initial matter, the Court acknowledges that Plaintiffs have satisfied the numerosity and typicality requirements of Rule 23(a). The record indicates that the proposed class of delivery drivers exceeds 200 individuals (Doc. No. 49-7), a significant number more than the amount of class members

---

[6] Defendants also assert that Plaintiffs' state law claims require additional proof from their FLSA claims that would necessitate individualized inquiries. (Id. at 27-28.)

generally accepted within this Circuit to satisfy the numerosity requirement. See Stewart, 275 F.3d at 226-27 (noting that "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."). Further, Plaintiffs and proposed class members have the same claims arising from the same course of conduct: specifically, violations of state wage and hour laws resulting from Defendants' alleged operation of an illegal tip pool. (Doc. No. 49 at 18-19.) The record does not indicate, and Defendants have not argued, that Plaintiffs' claims are not typical of those of the proposed class, or that there are legal or factual issues specific to Plaintiffs that would preclude a finding of typicality in this case. Therefore, the Court concludes Plaintiffs have satisfied the typicality requirement. Finally, having reviewed the record in this case, the Court is persuaded that there is no conflict of interest between Plaintiffs and the members of the proposed class that would render Plaintiffs inadequate class representatives or indicate Plaintiffs' counsel could not competently litigate this action. Therefore, the Court finds that Plaintiffs have satisfied the adequacy requirement.[7]

However, it is readily apparent from a thorough review of the record that Plaintiffs cannot meet their burdens regarding the commonality requirement of Rule 23(a) and the predominance requirement of Rule 23(b).[8] As noted, the commonality requirement is satisfied where "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class," see Baby Neal, 43 F.3d at 56, and Plaintiffs bear the burden of demonstrating

---

[7] Defendants do attempt to argue that Plaintiffs are inadequate class representatives because they "have a track record of dishonesty pertaining to wages, and in some instances a criminal history." (Doc. No. 54 at 34). The Court notes that "most courts have rejected challenges to class representatives based on allegations of 'unrelated unsavory, unethical, or even illegal conduct.'" See McCall v. Drive Fin. Servs., L.P., 236 F.R.D. 246, 251 (E.D. Pa 2006) (citations omitted). Having reviewed the record, the Court finds no reason why Plaintiffs' prior conduct would preclude them from "vigorously and responsibly" representing the proposed class. See id.

[8] It is not uncommon for courts to analyze the commonality and predominance elements together. See Reinig, 912 F.3d at 127 (collecting cases). Therefore, the Court will do so here.

that "[Defendants'] conduct was common to all of the class members." See Rodriguez, 726 F.3d at 382 (citing Sullivan, 667 F.3d at 299). Predominance is met where a district court finds that "the essential elements of the claims brought by a putative class are 'capable of proof at trial through evidence that is common to the class rather than individual to its members.'" See Gonzalez, 885 F.3d at 195 (quoting Hydrogen Peroxide, 552 F.3d at 311-312). Further, "as a general rule, an action based substantially on oral rather than written communications is inappropriate for treatment as a class action." See Johnston v. HBO Film Mgmt., 265 F.3d 178, 190 (3d Cir. 2001) (collecting cases).

In the present case, Plaintiffs allege that Defendants maintained an illegal tip pool by requiring delivery drivers to share tips with kitchen workers. (Doc. No. 49 at 3.) Plaintiffs insist that delivery drivers were orally informed about this alleged requirement at the end of their first shifts. (Id. at 6.) In support of their claim that drivers were required to tip-out to kitchen workers, Plaintiffs have provided deposition testimony from the current named plaintiffs in this action. (Doc. Nos. 49-1 at 11, 49-2 at 10, 49-3 at 14-17, 49-4 at 13.) Plaintiffs also insist that "documentary evidence supports [Plaintiffs' deposition] testimony." (Doc. No. 49 at 8.) Specifically, Plaintiffs point to a provision of an "end of night" checklist allegedly for driver managers that includes a note to "make sure all drivers tip-out." (Id.) (see also Doc. No. 49-6 at 3.) Finally, Plaintiffs contend the tip pool was mandatory because a handful of emails mention its existence. (Doc. Nos. 57 at 3-7, 57-1-57-6, 57-8.) Defendants, by contrast, have put forth sworn affidavits from Defendant Moreira, General Manager Jonathan Street, and three delivery drivers all stating that the tip pool was voluntary. (Doc. Nos. 51-1-51-2, 51-5-51-7.) Additionally, Defendants put forth the deposition testimony of former named plaintiff Jacob Wilson as evidence that the "end of night" checklist proffered by Plaintiffs was drafted by

Wilson, was not an official training document, and was not distributed to or followed by all managers.[9]  (Doc. Nos. 54 at 21, 51-4 at 104-110.)  Wilson's deposition testimony also makes clear that no other employee documentation includes any mention of tip-out.  Wilson testified:

> **Q      Okay.  We just looked at a few different training documents.  Are you aware of any training documents that include the requirement that the drivers tip-out?**
> **A      That one that we showed [the "end of night" checklist], but that was for managers, not the drivers.  So no, not for the drivers, specifically.**

(Doc. No. 51-4 at 145.)

As noted above, Plaintiffs have suggested that the Court should disregard contradictory evidence provided by Defendants as biased or irrelevant.  (Doc. No. 57 at 5-14.)  However, the Court finds no reason to do so.  First of all, the fact that tip-out was discussed in a handful of emails (Doc. Nos. 57 at 3-7, 57-1-57-6, 57-8) does not necessarily support the conclusion urged by Plaintiffs' that the tip pool was mandatory.  (Doc. No. 57 at 4.)  Second, Plaintiffs' argument that the Court should disregard Defendants' affidavits from other delivery drivers swearing that they believed tip-out was voluntary because "Defendants, who had more than 200 delivery drivers in just the past few years, and untold numbers of delivery drivers currently working for

---

[9] Plaintiffs contend that Defendants' argument that Wilson drafted the checklist is "wholly inaccurate." (Doc. No. 57 at 2 n.1.)  The Court's review of Wilson's deposition indicates that Wilson was, in fact primarily responsible for drafting the checklist, and, by his own admission, the provision at issue regarding tip-outs. (Doc. No. 51-4 at 104-107.) Specifically, Wilson testified:
> **I brought it up to [GM] Street that we didn't have anything for the -- you know, we didn't have anything official [for supervisors closing the store]. We might forget things.  He [Street] was like, 'well, why don't you make up a thing, I'll look at it and we'll go with that.' So I made this up.**
>
> * * *
>
> **Q      Okay. Who wrote this Section 6 [covering tip-out]? Do you remember?**
> **A      I did, I think.**

them, only proffer three affidavits," (id. at 9), is unconvincing. By the same logic, the Court should disregard Plaintiffs' own evidence because they proffer testimony from only five former employees. The Court will do neither.

Considering the record as a whole, the Court can only conclude that Plaintiffs cannot meet their burden of establishing commonality and predominance by a preponderance of the evidence under Rule 23. Plaintiffs must be able to satisfy the elements of their claims through common, rather than individual, proof that the class members were subjected to the same conduct. See Reinig, 912 F.3d at 127. Here, Plaintiffs rely almost exclusively on allegations that the tip-out policy was verbally communicated to class members. By necessity then, establishing whether each class member was subjected to a mandatory, as opposed to a voluntary, tip pool would require individualized inquiries into what each driver was told, when, and by whom. Claims that rely on such individualized evidence are unsuited to class certification. See id. at 128 (citing Newton, 259 F.3d at 172). Therefore, the Court will deny Plaintiffs' motion for class certification under Rule 23.[10]

### B. Motion to Conditionally Certify a Collective Class

#### 1. Legal Standard

Collective action certification under the FLSA is wholly distinct from class certification under Rule 23. See Reinig, 912 F.3d at 132 (citing Grayson v. K Mart Corp., 79 F.3d 1086, 1096 n.12 (11th Cir. 1996) ("[I]t is clear that the requirements for pursuing [an FLSA] class

---

[10] Defendants further argue that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law class claims because the state law claims "overshad[ow] their tiny putative FLSA opt-in collective by overwhelming numbers," (Doc. No. 54 at 28). Because the Court finds that Plaintiffs cannot meet their burden establishing commonality and predominance, and will deny class certification on those grounds, it declines to separately take up Defendants' final argument.

action are independent of, and unrelated to, the requirements for a class action under Rule 23[.]"))  As noted above, certification of a collective action under the FLSA is a two-step process.  At the current stage of conditional certification, courts within this Circuit have determined a "fairly lenient standard" applies.  See Zavala, 691 F.3d 527, 535 (collecting cases).  Indeed, the Third Circuit requires only a "modest factual showing" to support a "factual nexus between the manner in which the employer's alleged policy affected [the plaintiffs] and the manner in which it affected other employees."  See Zavala, 691 F.3d at 536, n. 4 (citing Symczyk, 656 F.3d at 193.).  The Court does not consider whether the named plaintiffs are, in fact, similarly situated enough to opt-in plaintiffs to maintain a collective action until final certification.  See Halle, 842 F.3d at 226.

### 2. Parties' Arguments

Plaintiffs argue that they have "easily" met their burden at this stage of the certification process.  (Doc. No. 50 at 15.)  Specifically, Plaintiffs note that they have alleged in their pleadings that Defendants "maintain a company-wide policy of taking a tip credit for all hours worked by Plaintiffs and all other [d]elivery [d]rivers" and that Plaintiffs were "subjected to an illegal tip pool" and have produced discovery and deposition testimony to support those assertions.  (Id. at 18.)  Plaintiffs argue that Plaintiffs and potential opt-in plaintiffs are similarly situated "by virtue of being subjected to Defendants' improper compensation scheme" as well as with regard to their job duties.  (Id. at 21.)  Plaintiffs assert that "there can be no reasonable dispute" about whether Defendants maintained a policy under which delivery drivers tipped out to kitchen workers and that, therefore, conditional certification of a collective action is appropriate.  (Id. at 22.)

By contrast, Defendants argue that Plaintiffs "have failed to produce evidence of an illegal company tip-out policy or practice." (Doc. No. 53 at 15.) Specifically, Defendants argue that "any violation of the FLSA was caused by individual supervisors, not any common policy or practice" and that, therefore, conditional certification of a collective action is inappropriate. In support of this assertion, Defendants cite to a few pieces of evidence they claim indicate that any tip-out practice was strictly voluntary.[11] Defendants further argue that "no employees were ever disciplined for noncompliance" and that "Plaintiffs here have not produced evidence showing that all the proposed collective action members were subjected to and harmed by [Defendants'] alleged tip-out policy." (Id. at 19, 22.) Finally, Defendants assert that Plaintiffs cannot seek to certify a collective action beyond February of 2017 because no presently named plaintiffs were employed by Defendants after that time. (Id. at 24-26.)

### 3. Whether the Motion Should Be Granted

The Court agrees with Plaintiffs that conditional certification is warranted at this time. As noted, Plaintiffs' burden at the conditional certification stage is not high. See Zavala, 691 F.3d at 536, n.4 (citing Symczyk, 656 F.3d at 193.) Here, Plaintiffs have provided sworn deposition testimony that all drivers were trained to tip-out to kitchen staff at the end of each shift. (Doc. Nos. 49-1 at 11, 49-2 at 10, 49-3 at 14-17, 49-4 at 13.) Plaintiffs have further produced other discovery documents they claim support their assertion that all delivery drivers were subjected to the same policy. (Doc. Nos. 49-6, 57-1-57-8.) The Court has identified several cases granting

---

[11] Specifically, Defendants have put forth sworn affidavits from Defendant Moreira, General Manager Jonathan Street, and three delivery drivers all stating that the tip pool was voluntary. (Doc. Nos. 51-1-51-2, 51-5-51-7.) Additionally, Defendants put forth the deposition testimony of former named plaintiff Jacob Wilson as evidence that the "end of night" checklist proffered by Plaintiffs was drafted by Wilson, was not an official training document, and was not distributed to or followed by all managers. (Doc. Nos. 54 at 21, 51-4 at 104-110.)

15

conditional certification with similar record evidence.  See Viscomi v. Clubhouse Diner, No. 13-CV-4720, 2016 WL 1255713, at *5 (E.D. Pa. March 31, 2016) (granting conditional certification based on affidavits); Chung v. Wyndham Vacation Resorts, Inc., No. 3:14-CV-00490, 2014 WL 4437638, at *2 (M.D. Pa. Sept. 9, 2014) (granting conditional certification based on declarations); Craig v. Rite Aid Corp., No. 08-CV-2317, 2009 WL 4723286, *4 (M.D. Pa. Dec. 9, 2009) (granting conditional certification based on affidavits); Notably, Defendants have cited no legal authority to the Court that suggests Plaintiffs' evidence is insufficient to support conditional certification.[12]  Further, Defendants' additional arguments regarding employee discipline, the alleged voluntariness of the tip-out procedure, and the extent to which tip-out practices were known to or ordered by upper management all go directly to the merits of this case.  It is well established that defenses related to the merits of the case are more properly considered at the stage of final certification.  See Neal v. Air Drilling Assocs., No. 3:14-CV-1104, 2015 WL 225432, *3 ("At the step-one inquiry, the court does not weigh the evidence,

---

[12] Defendants cite two cases in support of their arguments.  (Doc. No. 53 at 15, 20) (citing Postiglione v. Crossmark, Inc., No. 11-CV-960, 2012 WL 5829793 (E.D. Pa. Nov. 15, 2012); Shiptoski v. SMG Grp., LLC, No. 3:16-CV-1216, 2018 U.S. Dist. LEXIS 16687 (M.D. Pa. Jan. 31, 2018)).  In Postiglione, an overtime case, conditional certification was denied where the plaintiffs failed to identify a common policy that allegedly violated the law and contradicted themselves in their own testimony.  See Postiglione, 2012 WL 5829793, at *5.  Defendants appear to cite to Shiptoski to suggest this Court established a new or heightened standard for conditional certification.  (Doc. No. 53 at 22-23.)  To the contrary, the Court's bare recitation of the plaintiffs' evidence in that case in no way established that all plaintiffs seeking conditional certification in a collective action under the FLSA must present at least that much evidence for certification to be granted.  See Shiptoski, 2018 U.S. Dist. LEXIS 16687, at *6-8.  Indeed, the opinion emphasizes at multiple points that plaintiffs seeking conditional certification need only make a "modest factual showing" and that it is inappropriate to consider arguments on the merits of the claims at such an initial step.  See id.

16

resolve factual disputes, or reach the merits of plaintiff's claims.") Therefore, the Court declines to review Defendants' arguments on the merits at this time.[13]

The Court notes that Plaintiffs seek to certify a collective class of "all [d]elivery [d]rivers who worked for Defendants between May 24, 2014, and the present." (Doc. No. 48 at 1-2.) Plaintiffs have requested that Defendants produce a list of the names and contact information for "all persons employed by Defendants as [d]elivery [d]rivers during the last three years." (Doc. No. 50 at 24.)[14] Defendants object to the application of a three-year statute of limitations in this case because "[Plaintiffs] have not actually pled the existence of willful violations." (Doc. No. 53 at 26.) However, this Court has determined that the willfulness of an FLSA violation is "an issue going to the merits of the case and not whether notice should be issued to potential claimants." See Chung, 2014 WL 4437638, at *4 (citing Gallagher v. Lackawanna Cty., No. 3:07-CV-0912, 2008 WL 9375549, at *9 (M.D. Pa. May 30, 2008)). Therefore, for purposes of conditional certification, the Court finds that Plaintiffs' allegations are sufficient to warrant notice based on a three-year statute of limitations and will consider Defendants' arguments at the final certification stage. See id.

The Court's decision to conditionally certify a collective action under the FLSA does not end the inquiry. The Court agrees with Defendants that Plaintiffs have produced no evidence whatsoever that the alleged illegal tip pool remained in existence beyond February of 2017. Therefore, the Court cannot conclude that Plaintiffs have made even the "modest factual

---

[13] While the Court will not rule on Defendants' merits arguments at this time, it will nonetheless remind all parties for any future filings that representations made to the Court should be reasonable accountings of the record and applicable law. See Pa. R.P.C. 3.3.

[14] The Court construes this request to be seeking information for the three years preceding the filing of the instant motion. In FLSA actions, a plaintiff must generally bring a claim within two years after the accrual of the cause of action; however, the statute of limitations is extended to three years where a defendant's violation is willful. See 29 U.S.C. § 255(a).

showing" required for conditional certification as to the entire proposed class of delivery drivers. See Burkhart-Deal v. Citifinancial, Inc., No. 07-CV-1747, 2010 WL 457127, at *5 (W.D. Pa. Feb. 4, 2010) (noting that a court may appropriately limit collective certification where there is limited or no evidence to support a broader certification).[15] As such, the Court will limit the conditional certification to delivery drivers employed between May 24, 2014 and February 28, 2017.

Finally, the Court must consider Defendants' argument that it would be "inappropriate to force the new Wings Over restaurant to post a notice of collective action for alleged violations by the prior restaurant." (Doc. No. 53 at 25.) Specifically, Defendants argue that "[n]ew owners purchased the assets of Defendant WOHV MDF and made significant changes to the restaurant." (Id.) Defendants once again remind the Court that Plaintiffs have presented no evidence of wrongdoing by the current owners. (Id. at 24-25.) It is well-established that district courts have broad discretion in directing notice to potential opt-in plaintiffs. See Hoffmann-La Roche, 493 U.S. at 170 (holding that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b).") Therefore, the Court agrees with Defendants that it would be unreasonable to require Defendant Wings Over Happy Valley, LLC to post notice when the Court has limited the collective period to an end date months prior to the time Defendant Wings Over Happy Valley, LLC purchased the assets of the remaining Defendants.

---

[15] Plaintiffs' assertion that any limitation must be determined at the second stage of certification, (Doc. No. 56 at 22), is contradicted by the very case they cite in support of the argument. See Burkhart-Deal, 2010 WL 457127, at *5. ("I am persuaded that limiting the collective certification in this manner is appropriate. I will conditionally certify a collective action, but will limit the certification. . ." (emphasis added))

## IV.  CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' motion for class certification pursuant to Rule 23 (Doc. No. 47) and grant Plaintiffs' motion to conditionally certify a collective class under the FLSA (Doc. No. 48).  An appropriate Order follows.