**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TY CARTS, <u>et</u> <u>al.</u>, individually and** | : | |
| **on behalf of all other similarly situated** | : | |
| **individuals,** | : | |
| **Plaintiffs** | : | **No. 4:17-cv-00915** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **WINGS OVER HAPPY VALLY MDF,** | : | |
| **LLC d/b/a WINGS OVER HAPPY** | : | |
| **VALLEY, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

In this collective action brought pursuant to the Fair Labor Standards Act ("FLSA"), 29

U.S.C. §§ 201-219 (Doc. No. 1), named Plaintiffs Ty Carts, Lewis Grove, Colin Krieger, and

Branden Ronald, along with twenty (20) opt-in Plaintiffs, move for equitable tolling of the FLSA

statute of limitations for all opt-in Plaintiffs (collectively, "Plaintiffs").  (Doc. No. 93 at 23.)

Defendants Wings Over Happy Valley MDF, LLC, and Steven C. Moreira ("Defendants")

oppose Plaintiffs' motion and move for leave to file discovery to supplement its opposition to

Plaintiffs' motion for equitable tolling.  (Doc. No. 97.)   For the following reasons, the Court will

deny Plaintiffs' motion and, as such, deny Defendants' motion as moot.

**I.      BACKGROUND**

The four named Plaintiffs, along with a now-dismissed plaintiff, Jacob Wilson

("Wilson"), commenced this FLSA collective action on May 24, 2017, seeking to represent a

class of delivery drivers alleging violations of FLSA and various state wage and hour laws

against Defendants.  (Doc. No. 1.)  According to the allegations in the complaint, Defendants

required their delivery drivers to share tips with kitchen employees in violation of 29 U.S.C. §

203(m), which prohibits "the pooling of tips" except "among employees who customarily and

regularly receive tips." (Id. ¶¶ 18-21.)  Defendants purportedly insisted upon this arrangement to "avoid . . . pay[ing] their kitchen workers an appropriate wage."  (Id. ¶ 21.)

In July 2017, Defendants filed an answer, along with a counterclaim against Wilson, who is a supervisor and a former delivery driver for Defendants, for the allegedly fraudulent collection of unearned wages.  (Doc. No. 9.)  One month later, Plaintiffs filed two motions: a motion to dismiss Defendants' counterclaim, and a motion for leave to amend their complaint to remove Wilson as a plaintiff.  (Doc. Nos. 10, 11.)  In January 2018, the Court granted the motion to dismiss without prejudice and deemed the motion for leave to amend withdrawn.  (Doc. No. 22.)  Plaintiff filed a second motion for leave to file an amended complaint removing Plaintiff Jacob Wilson and adding Wings Over Happy Valley, LLC, as a defendant (Doc. No. 24), and the Court granted that motion in February 2018 (Doc. No. 27).[1]  Defendants filed an answer responsive to the amended complaint in April 2018.  (Doc. No. 33.)

The Court referred this case to mandatory mediation in May 2018, appointed a mediator, afforded the parties sixty days to participate in a mediation conference, and stayed the action pending the result of mediation.  (Doc. Nos. 37-38.)  Upon receipt of the mediator's June 21, 2018 report indicating the parties' inability to reach a settlement (Doc. No. 39), the Court held a status conference and provided deadlines, including one of October 1, 2018, for the filing of a motion for class certification.  (Doc. No. 41).  The Court authorized limited discovery for purposes of briefing the issue of class certification.  (Id.)  Between July and October 2018, the Court resolved other motions, granting both a protective order and Plaintiffs' motion for leave to file a brief in support that exceeded Local Rule 7.8's page limits.  (Doc. Nos. 43, 46.)

---

[1] Defendants Wings Over Happy Valley MDF, LLC and Steven Moreira sold the assets of the Wings Over Happy Valley restaurant to Wings Over Happy Valley, LLC subsequent to the commencement of this case.  (Doc. No. 24-1.)

On October 1, 2018, Plaintiffs' counsel filed a motion to certify a class pursuant to Federal Rule of Civil Procedure 23 (Doc. No. 47) and a motion to conditionally certify a collective class under the FLSA and to certify their state-claims class under Rule 23 (Doc. No. 48). The parties timely briefed these motions (Doc. Nos. 50-57), and Defendants filed an additional reply in February 2019 (Doc. No. 63) after obtaining the Court's permission to do so (Doc. Nos. 58, 61). During the pendency of those motions, seven opt-in Plaintiffs filed notices of their consent to be parties to this action. (Doc. Nos. 64-70.) In February 2020, the Court denied Plaintiffs' Rule 23 motion and granted their motion to conditionally certify a collective class under the FLSA, permitting the collective class – all individuals who worked for Defendants as delivery drivers between May 24, 2014, and February 28, 2017 – notice and an opportunity to opt into this action. (Doc Nos. 71, 72.)

In March 2020, Plaintiffs filed a motion for approval of a concurred-in collective action notice (Doc. No. 73) and a motion for equitable tolling (Doc. No. 74). The Court approved the collective action notice in April 2020. (Doc. No. 78.) In June and July 2020, eleven opt-in Plaintiffs opted into this action by signing and submitting the Court-approved notice. (Doc. No. 79-89). In August 2020, the Court denied, without prejudice, Plaintiffs' motion for equitable tolling, noting that it lacked jurisdiction to issue an advisory opinion as to whether tolling applies to potential opt-in plaintiffs. (Doc. No. 90.) Shortly thereafter, an additional opt-in Plaintiff consented to join in this action, bringing the total to twenty (20) opt-in Plaintiffs in all. (Doc. No. 91.) On October 26, 2020, Plaintiffs filed their second, currently pending motion for equitable tolling (Doc. No. 93), and on February 18, 2021, Defendants filed their motion (Doc. No. 97) to file discovery as a supplement to their opposition to Plaintiffs' motion for equitable tolling. Having been fully briefed (Doc. Nos. 93-2, 95-96, 98-100), the parties' motions are ripe

for disposition.

## II.  DISCUSSION

Plaintiffs request "equitable tolling [for all opt-in Plaintiffs] to February 21, 2020, the date the Court granted [their] motion to conditionally certify a collective class and permitted notice and an opportunity to opt-in" – or, alternatively, to October 14, 2018, "the date two years prior to the filing of the most-recent consent to opt-in."  (Doc. No. 93-2 at 8.)

### A.  Legal Standard

The statute of limitations for FLSA claims is two years, except for "willful" violations, in which case it is three years.  See 29 U.S.C. § 255(a).  Such claims generally accrue "at each regular payday immediately following the work period during which the services were rendered for which the wage . . . compensation is claimed."  See Hughes v. Region VII Area Agency on Aging, 542 F.3d 169, 187 (6th Cir. 2008); see also 29 C.F.R. § 790.21(b)).  The limitations period runs from the date of accrual until a plaintiff "commences" a FLSA action.  See 29 U.S.C. § 255(a).  A named plaintiff commences a FLSA action by filing a complaint and consenting to be a party plaintiff therein, whereas an opt-in plaintiff commences a FLSA action by "fil[ing] written consent with the [C]ourt to join the lawsuit."  See Yahraes v. Rest. Assocs. Events Corp., No. 10-cv-935, 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011); see also 29 U.S.C. § 256(a)-(b); 29 C.F.R. § 790.21(b)(2)(i)-(ii).  As such, the "applicable statute of limitations is particularly significant in FLSA collective actions because . . . an individual plaintiff's claim is not considered 'commenced' until he opts into the lawsuit."  See Tyger v. Precision Drilling Corp., No. 20-1070, 2020 WL 6268335, at *6 (3d Cir. Oct. 26, 2020).

"Equitable tolling stops the running of the statute of limitations in light of established equitable considerations."  See New Castle Cty. v. Halliburton NUS Corp., 111 F.3d 1116, 1125

(3d Cir. 1997). The doctrine "is read into every federal statute of limitations, including the FLSA." See Jones v. Giant Eagle, Inc., No. 2:18-cv-1534, 2019 WL 4743687, at *4 (W.D. Pa. Sept. 30, 2019). While the doctrine is to be applied "sparingly" and only in "rare" circumstances, see Holland v. Florida, 560 U.S. 631, 649 (2010), a plaintiff may invoke equitable tolling upon a "showing both (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing," see United States v. Miller, 830 F. App'x 398, 399 (3d Cir. 2020) (internal quotation marks omitted) (citing Holland, 560 U.S. at 649).

The United States Court of Appeals for the Third Circuit has identified "three principal, though not exclusive, situations in which equitable tolling may be appropriate":

> (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.

See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994) (citing Sch. Dist. v. Marshall, 657 F.2d 16, 19-20 (3d Cir. 1981); Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 845 (3d Cir. 1992)), abrogated on other grounds by Rotkiske v. Klemm, 890 F.3d 422, 428 (3d Cir. 2018). "Whether a statute of limitations should be tolled requires a case-specific inquiry into what is fair and in the interests of justice." Thompson v. Real Estate Mortg. Network, No. 11-cv-1494, 2019 WL 2636307, at *12 (D.N.J. June 26, 2019) (citing Miller v. N.J. State Dep't of Corr., 142 F.3d 174, 179 (3d Cir. 1998)). "The plaintiff ultimately bears the burden to show that equitable tolling is appropriate." Vargas v. Gen. Nutrition Ctrs., Inc., No. 10-cv-867, 2012 WL 5336166, at *5 (W.D. Pa. Oct. 26, 2012) (citing Woodward v. FedEx Freight E., Inc., 250 F.R.D. 178, 193 (M.D. Pa. 2008)).

**B.**     **Arguments of the Parties**

Plaintiffs maintain that tolling is warranted for two reasons: (1) undue delay at no fault of any opt-in Plaintiff; and (2) Defendants' allegedly dilatory conduct.  (Doc. No. 93-2 at 12.)  The first ground is based on the "lengthy delay between the commencement of this case in May of 2017 and the recent decision [of the Court] that provisionally certified, but drastically narrowed, the proposed collective class."  (Doc. No. 93-2 at 14.)  In this regard, Plaintiffs note that the Court did not certify the collective action class until February 21, 2020, and did not approve the parties' proposed collective action notice until April 27, 2020.  (Id. at 12, 17-18.)  They contend that these circumstances made it impossible for opt-in Plaintiffs to join this action within the limitations period, which expired on February 28, 2020, at the very latest.  (Id. at 18.)

Plaintiffs submit the declarations of four opt-in Plaintiffs who assert, inter alia, that they were unaware of this FLSA collective action until they received notice and an opportunity to opt in.  (Id. at 26-37.)  The declarations additionally indicate the following: (1) George Kepler was a delivery driver for Defendants from about 2011 to 2014, while attending Penn State, following which he moved to Pittsburgh, Pennsylvania; (2) Matthew Troxell was a delivery driver for Defendants from about January to May 2016 while attending Penn State, moved to New Jersey in 2017 upon graduating therefrom, and has not resided in the Penn State area, i.e., State College, Pennsylvania, at any time thereafter; (3) Wade Henshaw was a delivery driver for Defendants from about October 2013 to April 2017 while attending Penn State, has not resided in State College at any point following his graduation, and has resided in Phoenixville, Pennsylvania, since November 2019; (4) Christopher Gast was a delivery driver for Defendants from about June 2015 to December 2015 while attending Penn State, has not resided in in State College at any point following his graduation, and has lived in Lancaster, Pennsylvania, since January

2016.  (Doc. No. 93-2 at 26-37.)

As to their second ground for equitable tolling, Plaintiffs argue that "tolling is []
appropriate because of Defendants' tactics thus far."  (Id. at 20.)  They maintain that Defendants
filed their counterclaims, "which took many months to resolve," for the "sole purpose of
intimidating one named Plaintiff [i.e., Wilson] and/or unnecessarily delaying this litigation."
(Id.)  Plaintiffs submit that the fraud allegations in Defendants' counterclaims are "wholly
unsupported" and, at best, show that Wilson, "on a limited number of occasions," mistakenly
received supervisor wages while collecting tips as a delivery driver.  (Id. at 21.)  Plaintiffs further
assert that the Court lacked jurisdiction over Defendants' counterclaims because the
counterclaims were of a "minor nature" and involve only "a wildly minimal amount of allegedly
identified damages: $30.87."  (Id. at 22.)  Relatedly, Plaintiffs submit that Defendants acted in
bad faith when they refused to consent to the dismissal of Wilson from this action, resulting in
unnecessary motion practice.  (Id.)

In opposition, Defendants argue that the opt-in Plaintiffs did not exercise due diligence in
pursuing their FLSA claims, that the motion practice in this case was routine and
unextraordinary and did not prevent the opt-in plaintiffs from commencing FLSA claims within
the limitations period, and that they filed their counterclaims in good faith.  (Doc. No. 95 at 10-
11, 21.)  Regarding diligence, Defendants assert that they provided Plaintiffs a spreadsheet, in
August 2017, identifying no fewer than 350 prior employees of Defendants.  (Id. at 7.)
Defendants assert that Plaintiffs "fail to cite anything that precluded anyone from timely
pursuing their claims" (id. at 11 (emphasis in original)) and argue that "[a]ny opt-in who has
filed a written consent beyond the express limitations period is 'forever barred' from
commencing an FLSA claim under the statute's plain language" (id. at 13).  Defendants contend

that "[e]ach opt-in must [individually] demonstrate circumstances satisfying the [] prerequisites for equitable tolling," i.e., extraordinary circumstances and diligence. (Id. at 14.) According to Defendants, "aside from citing the voluntary relocation of two late-filing opt-ins (to Lancaster and Pittsburgh, respectively), Plaintiffs make no effort to demonstrate reasonable diligence." (Id. at 15.) Defendants argue that neither the opt-in Plaintiffs' ignorance of their rights to bring a FLSA claim nor their lack of awareness of the time limitations for doing so provide grounds for equitable tolling. (Id. at 16.) Defendants further submit that "[t]here is nothing extraordinary about a court taking time to resolve a motion." (Id. at 17.) They note that "some plaintiffs did timely opt[]in" before the Court granted conditional certification and before the FLSA limitations period had ran as to all potential claims. (Id. at 17) (emphasis in original). Defendants conclude that "[t]he amount of time this Court took to decide a collective certification motion (complicated by Plaintiffs' failed contemporaneous request for Rule 23 class certification) is not 'extraordinary.'" (Id. at 17-18.)

On the subject of their counterclaims, Defendants argue that "[a] pleading dispute resolved nearly three years ago did not prevent plaintiffs from asserting their rights, and they are precluded from raising it now anyway." (Doc. No. 95 at 21.) Defendants submit that "there is no evidence of bad faith" and assert that Plaintiffs "waited too long" to only now argue that Defendants filed their counterclaim in bad faith. (Id. at 21-22.) To "the extent Wilson's involvement delayed the litigation," Defendants argue that Plaintiffs "shoulder the blame for inexplicably including a manager in their action." (Id. at 22.) It is Defendants' position that they pleaded meritorious counterclaims based on their good faith belief that Wilson "was [] overpaid by virtue of misrepresenting his timesheets." (Id.) In response to Plaintiffs' contention that the counterclaims asserted nominal damages, Defendants maintain that their counterclaims identified

not one instance of a $30.87 overpayment but "a non-exhaustive list of 14 additional instances." (Id. at 23-24.)  Defendants also point out that the Court dismissed the counterclaims for lack of sufficient factual or legal overlap and not because of the "minor nature" of allegations.  (Id. at 24.)  Concluding, Defendants argue that "the pleading dispute from 2017 is irrelevant because it did not mislead any potential opt-in or preclude them from asserting their rights."  (Id. at 27.)

Turning to Defendants' motion for leave to submit discovery responses to supplement its opposition to Plaintiffs' motion for equitable tolling, Defendants argue that the "latecomer" opt-in Plaintiffs' responses to Defendants' discovery demands demonstrate that they neither diligently pursued their potential FLSA claims now established any extraordinary circumstances in support of granting equitable tolling.  (Doc. No. 98.)  Defendants maintain that they served discovery demands upon each individual opt-in Plaintiff seeking information concerning each's "circumstances relative to equitable tolling."  (Id. at 5.)  Defendants assert that counsel for Plaintiffs objected to those discovery demands based on the parties' joint case management plan, which reflects the parties' recommendation that each party be limited to serving twenty-five (25) interrogatories and twenty-five (25) document demands.  (Id. at 5-6; see Doc. No. 35 at 9.) Ultimately, the opt-in Plaintiffs served responses to Defendants' discovery demands, and Defendant now seeks to introduce those responses to establish that none of the opt-in Plaintiffs is entitled to tolling under the applicable case law.  (Doc. No. 98 at 6-7.)

Opposing Defendants' motion to supplement its opposition papers, Plaintiffs initially argue that Defendants' motion is "another example of needless and unnecessar[y] delay perpetrated by Defendants," noting that Defendants seek to submit over 400 pages of discovery requests that were filed several motions ago.  (Doc. No. 99 at 2.)  Plaintiffs assert that their objections to Defendants' discovery requests exceeded the statutory limits provided in Federal

Rule of Civil Procedure 33 (id. at 7), which provides that, "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."  Fed. R. Civ. P. 33(a)(1) (providing, nonetheless, that "[l]eave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)").  They also note that, under Local Rule 33.3, "[i]nterrogatories to a party, as a matter of right, shall not exceed twenty five (25) in number," and under Local Rule 36.1, "[r]equests for admissions to a party, as a matter of right, shall not exceed twenty[-]five (25) in number."  (Doc. No. 99 at 8-9.)  Plaintiffs argue that they fully responded to Defendants' discovery demands within these statutory and rule-based limits.  (Id. at 9.)

### C.    Analysis

The Court will address each of Plaintiffs' bases for equitable tolling – judicial "delay," and Defendants' litigation conduct – in turn.  As discussed, supra and infra, because the Court finds that Plaintiffs have failed to establish that equitable tolling is appropriate, it will deny as moot Defendants' motion to supplement its opposition to Plaintiffs' motion.  To reiterate, there are essentially three groups of opt-in Plaintiffs in this case: (1) the opt-in Plaintiff who opted into this action in 2018; (2) the seven opt-in Plaintiffs who opted into this action in 2019; and (3) the twelve opt-in Plaintiffs who opted into this action in 2020.  (Doc. Nos. 44, 64-70, 79-89, 91.)

### 1.    Whether Equitable Tolling Is Warranted Based on Judicial "Delay"

The United States Court of Appeals for the Third Circuit has not addressed the issue of "whether, in a [FLSA] collective action, any amount of time taken by a district court to decide whether to conditionally certify a collective action and issue a court-approved notice constitutes grounds for equitable tolling."  See Alvarez v. BI Inc., No. 16-cv-2705, 2018 WL 2288286, at

*14 (E.D. Pa. May 17, 2018).[2]  The Third Circuit has, however, made clear that "equitable tolling requires the plaintiff to demonstrate 'that he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim.'"  See In re Mushroom Transp. Co., Inc., 382 F.3d 325, 339 (3d Cir. 2004) (quoting Oshiver, 38 F.3d at 1390).

At the district court level, a survey of the relevant case law reveals a split of authority.  At least one court has found equitable tolling appropriate based on the combination of "court delay" (the almost eight-month period during which the plaintiffs' motion for conditional certification had been pending) and the defendants' misleading communications, which "may very well have" dissuaded potential opt-in plaintiffs "from pursuing their rights . . . ."  See Charles, 2018 WL 4924169, at *6-7.  Other courts have more broadly held that the time taken by a district court in resolving a conditional certification motion may alone justify equitable tolling.  See Yahraes, 2011 WL 844963, at *2 (equitably tolling the FLSA limitations period based on the duration of a certification motion's pendency) (citing DePalma v. Scotts Co. LLC, No. 13-cv-7740, 2017 WL 1243134, at *5 (D.N.J. Jan. 20, 2017) (same); Ornelas v. Hooper Holmes, Inc., No. 12-cv-3106, 2014 WL 7051868, at *4 (D.N.J. Dec. 12, 2014) (same); Bosley v. Chubb Corp., No. 04-cv-4598, 2007 WL 9604965, at *1 n.1 (E.D. Pa. Feb. 20, 2007) (same)).[3]  These courts reason that

---

[2]  Alvarez was decided in 2018, but the parties have not identified – and the Court has not uncovered – any subsequent developments in Third Circuit case law bearing on this issue.

[3]  See also Stephenson v. Family Sols. of Ohio, Inc., No. 1:18-cv-2017, 2020 WL 6685301, at *13 (N.D. Ohio Nov. 12, 2020) (noting that "[n]umerous courts have granted equitable tolling due to delays associated with the judicial process," including delays relating to a motion for conditional certification); Hansen v. Waste Pro of S.C., Inc., No. 2:17-cv-02654-DCN, 2020 WL 1892243, at *8 (D.S.C. Apr. 16, 2020) (noting that "courts have regularly found that a significant delay in a court's consideration of a motion for conditional class certification constitutes an 'extraordinary circumstance' that warrants tolling"); Sanchez v. Santander Bank, N.A., No. 17-cv-5775, 2019 WL 6050738, at *2 (D.N.J. Nov. 15, 2019) (recommending equitable tolling of

delays in the FLSA certification process may be "extraordinary" – or, at the very least, implicate the interests of justice – to the extent that they can severely prejudice opt-in plaintiffs who, through no fault of their own, did not receive timely notice to opt into a collective action.  See, e.g., Jones, 2019 WL 4743687, at *6; Depalma, 2017 WL 1243134, at *7; Yahraes, 2011 WL 844963, at *2.  They further reason that a named plaintiff's due diligence in pursuing a FLSA collective action on behalf of putative opt-in plaintiffs can satisfy the due diligence requirement of the equitable tolling doctrine.  See, e.g., Depalma, 2017 WL 1243134, at *7; Yahraes, 2011 WL 844963, at *3.

On the other hand, many courts have found it inappropriate to grant "equitable tolling for potential opt-in plaintiffs[] based solely on delay in deciding whether to conditionally certify a collective action . . . ."  See Alvarez, 2018 WL 2288286, at *15 (emphasis added) (declining to equitably toll the FLSA limitations period based on "routine delay [i.e., about 13 months] in deciding a conditional certification motion and issuing court-approved notice") (citing Vargas v. Gen. Nutrition Centers, Inc., No. 2:10-cv-867, 2012 WL 5336166, at *7 (W.D. Pa. Oct. 26, 2012) (denying motion for equitable tolling based on delays caused by pre-certification discovery); Titchenell v. Apria Healthcare Inc., No. 11-cv-563, 2012 WL 3731341, at *7 (E.D. Pa. Aug. 29, 2012) (same); Tompkins v. Farmers Ins. Exch., No. 5:14-cv-3737, 2015 WL

---

FLSA limitations period "from the date the motion for conditional certification was fully briefed . . . until the date an Order is entered by the District Judge" adopting recommendation), report and recommendation adopted, Sanchez v. Santander Bank, N.A., No. 17-cv-5775 (D.N.J. Nov. 2, 2020), ECF No. 183; Jones, 2019 WL 4743687, at *1 (equitably tolling claims based on long period of time during which the Court was deciding a motion for conditional certification of a collective); Penley, 206 F. Supp. 3d at 1348 (noting that, "[i]n collective wage and employment cases, courts regularly grant equitable tolling so that plaintiffs may assert their claims despite the kinds of delays inherent in such litigation"); Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (holding that "[t]he delay required to decide a motion may warrant equitable tolling").

12

4931605, at *6 (E.D. Pa. Aug. 18, 2015) (rejecting the plaintiffs' argument "that equity demands that the [c]ourt toll the statute of limitations . . . for the period of time that their [m]otion for conditional certification was pending . . .")). These courts reason that the "passage of time while a conditional certification motion is under consideration is, unfortunately, not 'extraordinary,' but rather a routine aspect of litigation." See Alvarez, 2018 WL 2288286, at *15; see also Magee, 2019 WL 8325110, at *4 (noting that, "in every case there is a delay between the filing of the complaint and the decision on the certification motion").[4] They further hold that the equitable tolling doctrine's "due diligence" requirement cannot be satisfied absent proof that each individual opt-in plaintiff diligently pursued his or her rights, either by filing a single-plaintiff FLSA claim, opting into the collective action before receiving notice, or commencing a separate collective action. See, e.g., Hintergerger, 2009 WL 3464134, at *15; Vargas, 2012 WL 5336166, at *7 (denying equitable tolling where there was "no suggestion that any potential opt-in plaintiffs who, if they acted with diligence, could not discover they might have a colorable claim for relief and file actions within the limitations period").

In line with this more limited approach, the United States Court of Appeals for the Fifth Circuit has held that while "protracted litigation" may "constitute an extraordinary circumstance," when "an employee's own inaction relegates opt-in notice from a specific suit as the only means of discovering an FLSA violation," the court "will not transform routine litigation into an extraordinary circumstance." See Sandoz v. Cingular Wireless, L.L.C., 700 F.

---

[4] Some courts have even held that equitable tolling can never apply to FLSA collective actions. These courts reason that Congress knew of that inherent delay but "chose not to provide for tolling of the [FLSA] limitations period," indicating that the text of FLSA itself forecloses the application of equitable tolling based on the pendency of a certification motion. See Woodard v. FedEx Freight E., Inc., 250 F.R.D. 178, 194 (M.D. Pa. 2008); see also Magee, 2019 WL 8325110, at *4.

App'x 317 (5th Cir. 2017).[5]  Notably, however, district courts within the Fifth Circuit, "in contrast to the dicta in the non-binding <u>Sandoz</u> opinion," have since "consider[ed] the diligence exercised by the plaintiff bringing the action rather than only or even primarily the diligence (or lack thereof) of the potential opt-in plaintiffs," <u>see</u> <u>Klick v. Cenikor Found.</u>, No. 4:19-cv-1583, 2020 WL 7646301, at *4 (S.D. Tex. Dec. 23, 2020) (citing cases).[6]

As a preliminary matter, upon reviewing the applicable case law, this Court is of the view that none of the three "principal . . . situations" delineated in <u>Oshiver</u>, 38 F.3d at 1387, is implicated here.  Defendants misled neither the named Plaintiffs nor any opt-in Plaintiffs "respecting [their] cause[s] of action."  <u>See</u> <u>id.</u>  The duration of the Court's resolution of Plaintiffs' certification motion, even if "extraordinary," did not prevent any opt-in Plaintiffs from asserting their respective rights in the form of a FLSA claim.  <u>See</u> <u>id.</u>  Nor is there any contention that Plaintiffs timely asserted their rights mistakenly in the wrong forum.  <u>See</u> <u>id.</u>  Nevertheless,

---

[5] <u>See also</u> <u>Coker v. Stonewater Roofing Co.</u>, No. 6:19-cv-00211, 2020 WL 1451654, at *2 (E.D. Tex. Mar. 25, 2020) (noting that "courts applying <u>Sandoz</u> have refused to equitably toll the FLSA statute of limitations if plaintiffs failed to prove both that potential opt-in plaintiffs diligently pursued their rights and that extraordinary circumstances—other than the period of time taken to rule on a motion—caused the limitations period to lapse"); <u>Magee v. Francesca's Holding Corp.</u>, No. 17-cv-565, 2019 WL 8325110, at *2 (D.N.J. Dec. 18, 2019) (declining to grant equitable tolling of the period during which plaintiffs attempted to settle the case and the parties engaged in pre-certification discovery, where the defendants rejected plaintiff's proposal to toll the FLSA limitations period, and of the period during which plaintiffs' certification motion was pending); <u>Czopek v. TBC Retail Grp., Inc.</u>, No. 8:14-cv-675, 2015 WL 12915566, at *2 (M.D. Fla. Aug. 7, 2015) (declining to award equitable tolling based on the "unusual amount of time lapsed during the pendency" of a motion to certify); <u>Hintergerger v. Catholic Health Sys.</u>, No. 08-cv-380S, 2009 WL 3464134, at *15 (W.D.N.Y. Oct. 21, 2009) (denying request for equitable tolling that was based on "litigation and motion practice-related delays," where the certification motion had been pending for 13 months).

[6] The specific circumstances at issue in <u>Klick</u> are not analogous to those presented by the instant matter.  The defendant-employer in that case had advised certain plaintiffs-employees that they were not, in fact, employees, misleading them concerning any potential FLSA claims.  <u>See</u> <u>Klick</u>, 2020 WL 7646301, at *3.

because the principal situations that may warrant equitable tolling under Oshiver are merely illustrative, the Court is not confined thereby and may instead consider whether equitable tolling "is demanded by sound legal principles as well as the interests of justice." See Colletti v. N.J. Transit Corp., 50 F. App'x 513, 518 (3d Cir. 2002) (internal quotation marks omitted).

Here, however, Plaintiffs have failed to establish their principal contention that the opt-in Plaintiffs who belatedly commenced their respective FLSA collective actions were excusably ignorant of this lawsuit because of the Court's "delay" in resolving Plaintiffs' certification motion and approving opt-in notice. Of the twenty (20) opt-in Plaintiffs in this action, one joined in September 2018 (Doc. No. 44) – about one month before Plaintiffs had even filed their motion for conditional certification on October 29, 2018 – and seven joined in October and November 2019 (Doc. Nos. 64-70), several months before the Court granted conditional certification and approved opt-in notice. Accordingly, as to the eight Plaintiffs who opted into this action in 2018 and 2019, it cannot be said that the Court's consideration of Plaintiffs' certification motion and subsequent approval of opt-in notice directly impeded their knowledge of and ability to opt into this action. Moreover, of the twelve remaining opt-in Plaintiffs – all of whom opted into this case no earlier than June 2020 (Doc. Nos. 79-89, 91) – four worked for Defendants no later than September 2015 (Doc. Nos. 82-83, 95-1 at 5-8),[7] which means that the FLSA statute of limitations expired as to their claims in September 2018, at the latest, i.e., before Plaintiffs filed their motion for conditional certification in October 2018. The Court is mindful of the flexible nature of the principles of equity, but those principles are not, in this Court's view, so flexible as

---

[7] According to the employee list that Defendants provided to Plaintiffs in 2017, Dylan Reap worked for Defendants until August 2014, Harrison J. Gardner worked for Defendants until January 2015, and Christopher Crosier and Alec D. Stouffer worked for Defendants until September 2015. (Doc. No. 95-1 at 5-8.)

to permit the retroactive revival of expired claims based on events that had not yet occurred at the time of the claims' expiration.

As to the eight remaining opt-in Plaintiffs, most opted into this action in June or July 2020 (Doc. Nos. 79-81, 85-86, 88-89), but one opted into the action in mid-October 2020 (Doc. No. 91), about six months after the Court approved opt-in notice.[8] As to these opt-in Plaintiffs, the Court finds that Plaintiffs have failed to sustain their burden to establish that equitable tolling is appropriate. Almost half of all the opt-in Plaintiffs opted into this action before the Court granted conditional certification and approved opt-in notice, demonstrating a general awareness among putative opt-in plaintiffs of the pendency of this action and their right to opt into it. Plaintiffs assert that the later-joining opt-in Plaintiffs were unaware of this action because they were students who neither lived near State College nor continued working for Defendants after graduating from Penn State, but not a single opt-in Plaintiff, not even those who opted into this action in 2018 and 2019, signed their opt-in notice within State College. (Doc. Nos. 44, 64-70, 79-89, 91.) For example, when Matthew J. Lamb opted into this action in October 2019, he indicated his location as Middletown, New Jersey. (Doc. No. 67.) Similarly, Matthew Troxell opted into this action in November 2019, whereas his declaration indicates that he had graduated from Penn State in 2017, moved to New Jersey directly thereafter, and remained "generally removed" from the State College area ever since. (Doc. No. 93-2 at 30.) The Court cannot credit Plaintiffs' contention that the opt-in Plaintiffs were excusably unaware of this action until they received the Court-approved opt-in notice, as several Plaintiffs – also generally removed from the State College area – opted into this action before the Court granted conditional

---

[8] As to the opt-in Plaintiff who opted into this action in October 2020, several months after the Court approved opt-in notice, the Court finds that due diligence is clearly lacking, and Plaintiffs have not provided any arguments or evidence to the contrary.

certification.  Further, Plaintiffs do not dispute that Defendants sent them a spreadsheet, in August 2017, listing over 350 former employees (past and present), including all twenty (20) opt-in Plaintiffs.  (Doc. No. 95-1 at 5-8.)   It bears emphasizing that equitable tolling is not an excuse for ignorance; it instead can only be applied upon a plaintiff's showing that "she could not, by the exercise of reasonable diligence, have discovered the essential information bearing on [] her claim."  See In re Mushroom, 382 F.3d at 339 (internal quotation marks omitted).

The evidence offered in support of Plaintiffs' motion does not further their arguments. They rely heavily on the statements of the four opt-in Plaintiffs who submitted declarations, all of whom indicated that their "first formal notice of a lawsuit involving [Wings Over Happy Valley] or otherwise relating to [their] work [thereat] was the Notice of Collective Action Seeking Compensation Under the Fair Labor Standards Act." (Doc. No. 93-2 at 27 (emphasis added); see Doc. Nos. 30, 33, 36.)  However, three of those Plaintiffs opted into this action before the Court approved the very opt-in notice that "formal[ly]" notified them of the action's pendency: Christopher Gast, who opted into this action on October 22, 2019 (Doc. No. 64); George Kepler, who opted into this action on October 23, 2019 (Doc. No. 65), and Matthew Troxell, who opted into this action on November 5, 2019 (Doc. No. 69).  The fact that they opted into this case before the Court approved the opt-in notice demonstrates that the Court's resolution of the conditional certification motion and approval of opt-in notice played no part in their delayed entry into this action.

Although Wade Henshaw ("Henshaw"), who opted into this action in June 2020 (Doc. No. 86), also submitted a declaration, that declaration indicates only that Henshaw's "first formal notice" of this lawsuit was the Court-approved opt-in notice.  (Doc. No. 93-2 at 33.)  Nothing in that declaration speaks to whether and when Henshaw received notice (formal or informal) of

this action.[9]  (Id. at 32-33.)  Having placed such heavy reliance on the contention that opt-in

Plaintiffs did not receive notice of this action because they were too far removed from the State

College area, Plaintiffs have failed to produce any evidence to support that argument.  Indeed,

the declarations submitted by Plaintiffs prove the precise opposite insofar as they demonstrate

that, despite the over one-year period during which the certification motion was under the

Court's consideration,[10] several Plaintiffs not only became aware of this action but also opted

into it.  Further, while Plaintiffs argue that the allegedly unlawful conduct here – improper tip

sharing – presents particularly complex issues that would not be readily understood to most

employees, the four named Plaintiffs and the eight opt-in Plaintiffs who opted into this action in

2018 and 2019 knew to commence a FLSA claim before receiving the Court-approved opt-in

notice.

On this record, given that equitable tolling is only to be applied sparingly and in rare

circumstances, the Court finds that Plaintiffs have failed to establish their burden of

demonstrating that tolling is appropriate because neither the named nor opt-in Plaintiffs have

established due diligence concerning the belated opt-in Plaintiffs.  This is not a case involving

countless opt-in Plaintiffs.  Rather, the universe of putative opt-ins was relatively narrow and, in

fact, set forth in an employee list that Defendants provided to Plaintiffs at the outset of this

litigation.  Plaintiffs have rested their claim for equitable tolling on a premise that their own

---

[9]  Presumably, if Henshaw had been completely ignorant of this action before receiving the
Court-approved opt-in notice, his declaration would have indicated as such.  Instead, his
declaration reads identically to the other three opt-in Plaintiffs who, while asserting that they
received "formal" notice of this lawsuit via the Court-approved opt-in notice, nevertheless
learned of the lawsuit and opted into it well before the Court ever approved that notice.

[10]  Plaintiffs filed their supplemental brief in support of their motion for equitable tolling in
February 2019, which means that their motion, from the point at which it became fully briefed
until the Court decided it in February 2020, was pending for about one year.

evidence does not support, i.e., that the opt-in Plaintiffs remained ignorant of this action until receiving the Court-approved opt-in notice. As for the named Plaintiffs, the evidence suggests that they or their counsel informed several opt-in Plaintiffs of this action before the Court approved opt-in notice. However, for reasons not borne out by the record, Plaintiffs did not inform all putative opt-in Plaintiffs of this action until the Court approved opt-in notice. They have offered a reason for not doing so – that several opt-in Plaintiffs were too far removed from the State College area to have learned of this action – but the evidence they have offered in support of that reason tends to prove otherwise. Accordingly, the Court need not decide the issue of whether a named plaintiff's diligence alone can justify the application of equitable tolling in a FLSA collective action and thereby excuse opt-in plaintiffs from establishing due diligence. The record simply does not permit a finding of due diligence – as to any class of Plaintiffs, named or otherwise – so as to warrant equitable tolling, even assuming the duration of the Court's resolution of Plaintiffs' conditional certification motion can be characterized as "extraordinary."[11] Because due diligence is a prerequisite to the application of equitable tolling, the Court finds tolling inappropriate here.

---

[11] Plaintiffs argue that this case presents a particularly compelling case for tolling because, by the time the Court granted conditional certification and approved opt-in notice, the longer, three-year FLSA statute of limitations had necessarily ran as to all opt-in Plaintiffs who had not yet joined this action. That circumstance notwithstanding, Plaintiffs have not established due diligence, without which showing the Court is not empowered to award tolling. Further, as the Court already indicated, supra, almost half of the opt-in Plaintiffs opted into this case before the Court had granted certification and approved opt-in notice, four other opt-in Plaintiffs' claims had become time-barred before Plaintiffs had even filed their motion for conditional certification, and none of the declarations submitted by Plaintiffs demonstrate that the Court's "delay" in resolving the certification motion and approving opt-in notice was the cause of the late-joining opt-in Plaintiffs' alleged inability to timely join this action.

## 2.    Whether Equitable Tolling is Warranted Based on Defendants' Litigation Conduct

Plaintiffs' second ground for equitable tolling is equally unavailing.  The circumstances alleged by Plaintiff, including that Defendants filed frivolous counterclaims solely to delay this case and "create procedural hurdles for Plaintiffs" (Doc. No. 96 at 11), do not fall within any of the three principal scenarios that warrant equitable tolling.  That is, Defendants' litigation conduct did not mislead the named or opt-in Plaintiffs concerning the FLSA causes of action, Defendants' filing of facially valid counterclaims and related conduct was not "extraordinary" and did not prevent the named or opt-in Plaintiffs from asserting their rights,[12] and, as already discussed, supra, there are no allegations that any Plaintiff timely asserted his or her rights "mistakenly in the wrong forum."  See Oshiver, 38 F.3d at 1387.  As Plaintiffs themselves concede, "Defendants' counterclaims were not, standing alone, extraordinary."  (Doc. No. 96 at 3.)  Defendants asserted their timely counterclaims in July 2017 (Doc. No. 9), after which Plaintiffs filed their motions for leave to amend and to dismiss, and Defendants filed a motion to strike Plaintiffs' motion.  The parties briefed the motions in September 2017 (Doc. Nos. 12, 15, 17-20), and the Court had resolved them by January 2018 (Doc. Nos. 21-21).  At that point, about seven months had elapsed from the commencement of the action.   Nothing about this timeline is "extraordinary" or unusual.

Further, although courts have granted equitable tolling based on a defendant's misleading

---

[12]  As the Court noted in dismissing, without prejudice to file in state court, Defendants' counterclaims for negligent and intentional misrepresentation, fraud, and breach of the duty of loyalty, "to succeed on their counterclaims, Defendants would need to show, at a minimum, that [the counterclaim defendant] misrepresented the time he spent in each of his employment roles, and that he did so negligently or intentionally." (Doc. 21 at 7.)  The Court never concluded that Defendants could not proceed on their counterclaims as alleged. (Id. at 6-7.)  Rather, the Court held that the counterclaims were not compulsory because they lacked sufficient factual and legal overlap. (Id.)

or patently dilatory conduct, in the instant case, Plaintiffs' assertion that Defendants filed their counterclaims solely to delay these proceedings is based on speculation. Indeed, while Plaintiffs initially argued that Defendants pursued their counterclaims in bad faith, they walk back that position in their reply, stating, "Plaintiffs have a difficult time suggesting that the counterclaims were pursued in formal bad faith." (Doc. No. 96 at 11.) Plaintiffs rely on Charles, 2018 WL 4924169, at *7, and McLaughlin v. Seneca Res. Corp., No. 17-cv-255, 2018 WL 1784554, at *4 (W.D. Pa. Apr. 13, 2018), but those cases involved a defendant's potentially misleading communications, see Charles, 2018 WL 4924169, at *7, and a defendant's "repeated and duplicative attacks on the sufficiency of [the] [p]laintiff's pleadings," see McLaughlin, 2018 WL 1784554, at *4. No such circumstances are at issue here. Accordingly, Plaintiffs have not established that equitable tolling is appropriate based on Defendants' allegedly dilatory litigation conduct.

## III.    CONCLUSION

For the foregoing reasons, the Court will deny both Plaintiffs' motion for equitable tolling (Doc. No. 93) and Defendants' motion to supplement its opposition thereto (Doc. No. 97). An appropriate Order follows.