IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TY CARTS, et al., individually and on behalf of all other similarly situated individuals, | : : : | No. 4:17-cv-00915 |
| Plaintiffs | : | (Judge Kane) |
| | : | |
| v. | : | |
| | : | |
| WINGS OVER HAPPY VALLEY MDF, LLC d/b/a WINGS OVER HAPPY VALLEY, et al., | : : : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiffs Ty Carts, Lewis Grove, Colin Krieger, and Branden Ronald (collectively, "Named Plaintiffs") initiated this collective action in 2017, asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and related state law claims[1] against Defendants Wings Over Happy Valley MDF, LLC, and Steven C. Moreira ("Defendants"). (Doc. No. 1.) Twenty-four (24) plaintiffs (collectively, "Opt-In Plaintiffs," and with Named Plaintiffs, "Plaintiffs") have since opted into this action. Now before the Court is Defendants' motion for partial summary judgment. (Doc. No. 123.) The Court will grant in part and deny in part Defendants' motion.

I.      BACKGROUND

A.      Procedural History

Named Plaintiffs, along with Jacob Wilson ("Wilson"), initiated this action with the filing of a complaint styled "COMPLAINT—CLASS ACTION" on May 24, 2017. (Doc. No. 1.) They brought suit maintaining that Wings Over and its then-owner and -operator, Defendant

---

[1] Plaintiffs asserted state law claims pursuant to Pennsylvania's Minimum Wage Act and Wage Payment and Collection Law. (Doc. No. 1 at 10-13.)

Steven Moreira ("Moreira"), required them and other delivery drivers to share their tips with kitchen employees in violation of 29 U.S.C. § 203(m), which prohibits "the pooling of tips" except "among employees who customarily and regularly receive tips," and state wage and hour laws.  (Id. at 5-13.)  The Named Plaintiffs alleged that Defendants did so in order to avoid "pay[ing] their kitchen workers an appropriate wage."  (Id. ¶ 21.)

With the Court's leave, in 2018, Plaintiffs filed an amended complaint (also styled "COMPLAINT—CLASS ACTION"), removing Wilson as a plaintiff and adding Wings Over Happy Valley, LLC, as a defendant.[2]  (Doc. No. 24-2.)  Following an unsuccessful mandatory mediation (Doc. Nos. 37-39), Plaintiffs filed motions to conditionally certify a FLSA collective class and to certify a FLSA and state law class pursuant to Federal Rule of Civil Procedure 23 (Doc. Nos. 47-48).  The Court granted Plaintiffs' motion to conditionally certify a FLSA collective class but denied their Rule 23 motions.  (Doc No. 72.)  The Court defined the collective class as all individuals who worked for Defendants as delivery drivers between May 24, 2014, and February 28, 2017, and permitted the class notice and an opportunity to opt into this action.  (Id.)  Plaintiffs then filed an unopposed motion for approval of a collective action notice, which the Court granted in April 2020, as well as a motion for equitable tolling, which the Court later denied without prejudice.  (Doc. Nos. 73-74, 78, 90.)

Throughout these proceedings—from mid-2017 through until late 2020—the twenty-four (24) Opt-In Plaintiffs consented to join this action.  In late 2020, after the last Opt-In Plaintiff consented to become a party plaintiff in this action, Plaintiffs filed a second motion for equitable tolling, which the Court denied.  (Doc. Nos. 93, 102.)  The parties then requested, and the Court

---

[2] The Court's subsequent references to "Defendants" encompasses the two initial Defendants as well this later-added Defendant.

granted, an extension of time to complete discovery.  (Doc. Nos. 103-04.)  The Court also scheduled a post-discovery status conference for November 4, 2021 (Doc. No. 104), whereupon the parties raised a discovery dispute, prompting additional briefing (Doc. Nos. 107-08) and an Order resolving the dispute (Doc. No. 106).

On December 30, 2021, Defendants filed a first motion for partial summary judgment, a statement of undisputed facts, an appendix of supporting documents, and a brief in support of the motion.  (Doc. Nos. 111-14.)  On February 10, 2022, after the Court granted them an extension to do so (Doc. Nos. 115-16), Plaintiffs filed a counterstatement of material facts and a brief in opposition to Defendants' motion (Doc. Nos. 117, 119).  Plaintiffs also submitted an additional "opposition" responding to the factual averments asserted in Defendants' motion itself.  (Doc. No. 118.)  After Defendants filed a reply brief on February 23, 2022 (Doc. No. 120), the Court issued an Order denying their first motion without prejudice, as it was based on factual averments not contained in their statement of undisputed material facts, in violation of Middle District of Pennsylvania Local Rules of Court, Local Rule 56.1 (Doc. No. 121).

Defendants filed their second, pending motion for summary judgment in April 2022 (Doc. No. 123), along with a Concise Statement of Undisputed Facts (Doc. No. 124) and a brief in support of their motion (Doc. No. 125).  In May 2022, Plaintiffs filed a Counterstatement of Material Facts (Doc. No. 126), a brief in opposition to Defendants' motion (Doc. No. 127), and an additional "opposition" to the motion (Doc. No. 128).  Defendants having filed a reply brief on May 16, 2022 (Doc. No. 129), their motion is ripe for disposition.

B.     **Factual Background**[3]

All four (4) Named Plaintiffs and twenty-four (24) Opt-In Plaintiffs worked as delivery drivers for the Wings Over restaurant ("Wings Over") at various points between 2015 and 2017. (Doc. No. 124 ¶¶ 18-66, 68, 70, 72.)  Defendant Steve Moreira was the sole member of Wings Over Happy Valley, MDF, LLC, which owned and operated Wings Over.  (Id. ¶ 10.)  Starting sometime around 2009 or 2010, delivery drivers began placing portions of their tips into a jar, and when the restaurant closed at the end of every workday, managers would empty the jar and divide the tips among the restaurant's kitchen staff.  (Doc. No. 122 at 147-49, 151-53, 155.) Moreira did not report the tip-sharing on the payroll, and no one at Wings Over kept any records of the tips shared with kitchen workers.  (Id. at 150, 157.)  Moreira did, however, instruct drivers that they were required to report all of their tips.  (Id. at 171-72.)

The tip-sharing continued into 2016, according to the testimony of Jonathan Street ("Street"), Wings Over's general manager since 2009, although there is no evidence that a tip jar was used after February 28, 2017.  (Doc. No. 124 ¶¶ 5, 14.)  In a letter to Moreira dated September 26, 2016 (the "Westmore Letter"), former Wings Over employee Arthur Westmore accused Defendants of enforcing an "illegal tip pool policy" by requiring drivers to contribute tips to a pool that was then divided among kitchen staff.  (Doc. Nos. 122 at 3-4, 124 ¶ 9.)  The parties are sharply divided as to whether and to what extent tip-sharing continued—and as to whether tip-sharing was required rather than voluntary—following Defendants' receipt of the Westmore Letter.  As addressed more thoroughly in the Court's discussion below, the parties

---

[3] The following relevant facts of record are taken from Defendants' Concise Statement of Undisputed Material Facts (Doc. No. 124) and Plaintiffs' Counterstatement of Material Facts (Doc. No. 126) and are undisputed unless otherwise noted.  The parties' statements of facts contain specific citations to the record at each numbered paragraph pertaining to factual matter.

point to disputed evidence in support of their positions.  To the extent that evidence is disputed

and discussed thoroughly, <u>infra</u>, the Court will not also recite it here.

## II.    LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is

warranted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  <u>See</u> Fed. R. Civ. P. 56(a).  A factual dispute

is material if it might affect the outcome of the suit under the applicable law, and it is genuine

only if there is a sufficient evidentiary basis for allowing a reasonable factfinder to return a

verdict for the non-moving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49

(1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient

disagreement to require submission to the jury or whether it is so one-sided that one party must

prevail as a matter of law.  <u>See</u> <u>id.</u> at 251-52.  In making this determination, a court must

"consider all evidence in the light most favorable to the party opposing the motion."  <u>See</u> <u>A.W.</u>

<u>v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an

absence of a genuine issue of material fact.  <u>See</u> <u>Conoshenti v. Pub. Serv. Elec. & Gas Co.</u>, 364

F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of

evidence to support the non-moving party's claims, "the non-moving party must rebut the motion

with facts in the record and cannot rest solely on assertions made in the pleadings, legal

memoranda, or oral argument."  <u>See</u> <u>Berckeley Inv. Grp. Ltd. v. Colkitt</u>, 455 F.3d 195, 201 (3d

Cir. 2006); <u>accord</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  If the non-moving party

"fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden at trial," summary judgment is

warranted.  See Celotex, 477 U.S. at 322.  A court should grant a motion for summary judgment

when the non-movant's evidence is merely colorable, conclusory, or speculative.  See Anderson,

477 U.S. at 249-50.  There must be more than a scintilla of evidence supporting the non-moving

party and more than some metaphysical doubt as to the material facts.  See id. at 252; see also

Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III.    DISCUSSION

Defendants argue that the undisputed material facts establish that all of the Named and

Opt-In Plaintiffs' FLSA claims are time-barred, with the exception of Opt-In Plaintiff Zachary

Keim, whose claims are partially time-barred.  (Doc. Nos. 123, 125, 129.)  Assuming the Court

would grant judgment in the Defendants' favor as to all FLSA claims asserted by the Named

Plaintiffs, Defendants further argue that the Court should decline to exercise supplemental

jurisdiction over the Named Plaintiffs' state law claims, leaving Plaintiff Keim as the sole

remaining Plaintiff in this action.

Below the Court first addresses Defendants' motion as it pertains to Plaintiffs' FLSA

collective action.  The Court will then turn to the Named Plaintiffs' state law claims under

Pennsylvania's Minimum Wage Act and Wage Payment and Collection Law.

### A.      FLSA Statute of Limitations

Causes of action under the FLSA must be commenced within two years of their accrual,

"except that a cause of action arising out of a willful violation may be commenced within three

years after the cause of action accrued."  See 29 U.S.C. § 255(a).  A civil action typically

commences with the filing of a "complaint with the court," see Fed. R. Civ. P. 3, and the same is

true of FLSA actions when they are brought in an individual capacity, see 29 U.S.C. § 256.  A

FLSA collective action, on the other hand, commences at different times for each plaintiff

depending on when they formally opt into the action.  Such actions are deemed commenced, "in the case of any individual claimant," on one of two dates:

> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

> (b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

See 29 U.S.C. § 256; see also 29 C.F.R. § 790.21(b)(2).

FLSA claims accrue "at each regular payday immediately following the work period during which the services were rendered for which . . . compensation is claimed."  See Hughes v. Region VII Area Agency on Aging, 542 F.3d 169, 187 (6th Cir. 2008); see also Stone v. Troy Constr., LLC, 935 F.3d 141, 154 (3d Cir. 2019) (quoting Hughes).  A "new and separate" cause of action accrues "[f]or each payday."  See Stone, 935 F.3d at 154.  Thus, to commence a timely FLSA collective action, an individual must file a written consent to become a "party plaintiff" within two years (or three for willful violations) of the regular payday immediately following the work period for which services were rendered without appropriate compensation.  The "applicable statute of limitations is particularly significant in FLSA collective actions," as "an individual plaintiff's claim is not considered 'commenced' until he opts into the lawsuit."  See Tyger v. Precision Drilling Corp., 832 F. App'x 108, 115 n.12 (3d Cir. 2020) (unpublished).

**B.     Plaintiffs' FLSA Claims**

The above framework requires the Court to evaluate the timeliness of each Plaintiff's claims by determining: (1) when the Plaintiff's claims accrued; (2) when the Plaintiff filed written consent to opt into this action; (3) whether the two- or three-year limitations period applies and as to which claims; and (4) whether the Plaintiff filed written consent within the

7

applicable limitations period.  The undisputed facts establish Plaintiffs' last dates of employment

with Wings Over (i.e., the latest possible accrual dates), as well as the dates on which they each

filed written consent, if any, to join this action, as reflected below:

| Plaintiff | Last Employed | Consent Filed |
|---|---|---|
| Ty Carts | May 9, 2016 | None |
| Colin Krieger | January 2, 2017 | None |
| Lewis Grove | February 13, 2017 | None |
| Branden Ronald | February 27, 2017 | None |
| Dustin Gilmore | May 26, 2015 | June 30, 2017 |
| Zachary Keim | February 28, 2017 | June 30, 2017 |
| Johnathan Lieberman | February 29, 2016 | March 21, 2018 |
| Joshua H. Braucht | March 13, 2016 | February 15, 2019 |
| Aaron Symosky | May 23, 2016 | September 26, 2018 |
| Christopher Gast | January 18, 2016 | October 22, 2019 |
| George Kepler | August 4, 2014 | October 23, 2019 |
| Toby Smoyer | April 10, 2016 | October 23, 2019 |
| Matthew J. Lamb | January 30, 2017 | October 28, 2019 |
| Seth J. Steele | February 28, 2017 | October 29, 2019 |
| Matthew Troxell | June 6, 2016 | November 5, 2019 |
| Michael Galantino | January 18, 2016 | November 7, 2019 |
| Dylan Reap | August 18, 2014 | June 3, 2020 |
| Harrison J. Gardner | January 19, 2015 | June 3, 2020 |
| Braxton Amundson | February 1, 2016 | June 3, 2020 |
| Michael Munoz | January 16, 2017 | June 3, 2020 |
| Ethan Butterbaugh | February 28, 2017 | June 3, 2020 |
| Alec D. Stouffer | September 27, 2015 | June 4, 2020 |
| Wade Henshaw | January 2, 2017 | June 8, 2020 |
| Vladimir Londõno | February 28, 2017 | June 8, 2020 |
| Christopher Crosier | January 5, 2015 | June 10, 2020 |
| D. Hoffman Jr. | January 12, 2015 | June 12, 2020 |
| Brian D. Floris | January 18, 2016 | July 6, 2020 |
| Moussa Sangare | January 16, 2017 | October 14, 2020 |

(Doc. Nos. 7-8, 31, 44, 60, 64-70, 79-89, 91, 124 ¶¶ 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40,

42, 44, 46, 48, 50, 52, 54, 56, 58, 60, 62, 64, 66, 68, 70, 72.)[4]

Given their respective dates of last employment—which represent the latest possible dates of accrual of their claims—and the dates on which they filed written consents, if at all, Plaintiffs appear to fall into roughly four categories: (1) Opt-In Plaintiffs who joined this action more than three years after they last worked for Wings Over; (2) Opt-In Plaintiffs who joined this action more than two years—but less than three years—after they last worked for Wings Over; (3) Opt-In Plaintiff Keim, who opted into this action within two years of his date of last employment; and (4) Named Plaintiffs, who initiated this action but did not file written opt-in notices.  The Court addresses each category of Plaintiffs in turn below.

### 1.     Opt-In Plaintiffs Who Opted Into This Action More Than Three Years of Their Dates of Last Employment (seventeen total)

As Plaintiffs concede (Doc. No. 127 at 2), in light of the Court's denial of their motion for equitable tolling (Doc. No. 102), seventeen (17) Opt-In Plaintiffs' claims are time-barred even assuming the FLSA's longer, three-year limitations period applies.  These Opt-In Plaintiffs—who include Amundson, Butterbaugh, Crosier, Floris, Galantino, Gardner, Gast, Kepler, Henshaw, Hoffman, Jr., Londõno, Munoz, Reap, Sangare, Smoyer, Stouffer, and Troxwell—did not opt into this action within three years of their last dates of employment with Wings Over.[5]  Even assuming these Opt-In Plaintiffs can establish willful FLSA violations

---

[4] Because Butterbaugh, Keim, Londõno, Steele all worked at Wings Over through the close of the collective period as defined by the Court, the Court has used that date—February 28, 2017— as their date of last employment.  (Doc No. 72.)  Any claims based on conduct that occurred after the close of the collective period are beyond the scope of this action.

[5] Twelve Opt-In Plaintiffs—Amundson, Butterbaugh, Crosier, Floris, Gardner, Henshaw, Hoffman, Jr., Londõno, Munoz, Reap, Sangare, and Stouffer—filed written consents no earlier than June 2020.  (Doc. Nos. 79-89, 91.)  The latest possible date any one of these Opt-In Plaintiffs could have worked for Wings Over would have been the last day of the collective period as defined by the Court (February 28, 2017).  Applying the FLSA's three-year limitations

sufficient to trigger the FLSA's three-year limitations period, these seventeen (17) Opt-In

Plaintiffs' claims are untimely.  See 29 U.S.C. §§ 255(a), 256; Hughes, 542 F.3d at 187.  The

Court will therefore grant Defendants' motion for summary judgment as to these Opt-In

Plaintiffs' FLSA claims.

> ### 2. Opt-In Plaintiffs Who Opted Into this Action More Than Two Years—but Less Than Three Years—of Their Dates of Last Employment (six total)

Six (6) Opt-In Plaintiffs filed written opt-in consents more than two years—but less than

three (3) years—of their dates of last employment with Wings Over.  Those Opt-In Plaintiffs are

Braucht, Gilmore, Lamb, Lieberman, Steele, and Symosky.  Because they did not commence

their respective FLSA actions within two years of their dates of last employment, these Opt-In

Plaintiffs' claims are untimely unless they can demonstrate that Defendants willfully violated the

FLSA such that the three-year limitations period applies.  See 29 U.S.C. § 255(a).

Defendants argue that Plaintiffs have failed to come forward with any evidence that they

willfully violated the FLSA.  (Doc. No. 125 at 17-19.)  They assert that "there is no evidence

whatsoever that Wings Over was subjectively aware of any potential violations of the FLSA

prior" to Wings Over's receipt of the September 2016 Westmore Letter.  (Id. at 18.)  Regarding

the time period following Wings Over's receipt of the Westmore Letter, Defendants argue that

they could not have willfully violated the FLSA given Moreira and Street's testimony that, upon

---

period based on that date, these twelve (12) Opt-In Plaintiffs were therefore required to file written consent to join this action no later than February 28, 2020, but did not do so until several months later.  Their FLSA claims, accordingly, are time-barred under the FLSA's three-year limitations period.  Next, five (5) Opt-In Plaintiffs—Galantino, Gast, Kepler, Smoyer, and Troxwell—worked at Wings Over no later than June 2016 and were therefore required to opt into this action by June 2019, at the latest. (Doc. Nos. 64-66, 69-70.)  Because all five (5) of these Opt-In Plaintiffs did not submit written consent to join this action until several months later—in October and November 2019—their claims are similarly time-barred.  See 29 U.S.C. §§ 255(a), 256.  (Doc. Nos. 124 ¶¶ 28, 30, 32, 34, 36, 126 ¶¶ 28, 30, 32, 34, 36.)

receipt of the letter, they "immediately reiterated to employees that the tip jar was voluntary."

(Id.)  Defendants further note the testimony of Wilson, formerly a named plaintiff in this action,

that the tip jar became voluntary at that time, as well as Smith's testimony that although the tip-

sharing practice "did not change[,] [t]he ensuring that people knew that it was voluntary

changed."  (Doc. Nos. 125 at 7, 19, 122 at 282.)  Defendants also point to an October 28, 2016

email from a Wings Over manager to Moreira, Street, and others, stating:

> Before I sent everyone home I noticed there was between $4-$5 dollars in the tip
> out.  I came out and told the[] [drivers] the situation while emphasizing it was
> voluntary.  Fenil and Matt S and someone else came back to kick in and the total
> was a bit better.  Now that people know it's optional they're really getting stingy.

(Doc. No. 122 at 390.)

The Court has carefully considered Defendants' contentions and finds them unavailing

because there is sufficient evidence in the record, construed in a light most favorable to

Plaintiffs, to raise a genuine dispute of material fact as to willfulness for both the period before

and the period after Defendants' receipt of the Westmore Letter.  "[W]illfulness under the FLSA

is established where 'the employer either knew or showed reckless disregard for the matter of

whether its conduct was prohibited by the [FLSA.]'"  Stone, 935 F.3d at 150 (quoting

McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)); see also Souryavong v.

Lackawanna Cnty., 872 F.3d 122, 127 (3d Cir. 2017) (stating that "[a] plaintiff must put forward

at least some evidence of the employer's awareness of a [FLSA] violation . . .").  The standard is

one of recklessness, and it can be satisfied with circumstantial evidence.  See id. at 148 & n.12

Although the FLSA does not itself define "reckless disregard," a FLSA-related regulation

defines the term as the "failure to make adequate inquiry into whether conduct is in compliance

with the [FLSA]."  See 5 C.F.R. § 551.104; see id. § 551.101(b) (proving that Part 551 of title 5

of the Code of Federal Regulations "must be read in conjunction with [the FLSA]"); see also

Davila v. Menendez, 717 F.3d 1179, 1184 (11th Cir. 2013) (applying § 551.104's definition of reckless disregard, stating, "[a]n employer willfully violates the Act if he should inquire as to whether his actions violate the Act, but fails to do so"); Stillman v. Staples, Inc., No. 07-cv-00849, 2009 WL 1437817, at *11 (D.N.J. May 15, 2009) (same).  Yet, an employer's failure to inquire due to negligence, without more, cannot establish willfulness.  See Stone, 935 F.3d at 149 n.8 (noting that willful conduct requires more than negligence).

Whether a defendant "acted willfully is a question of fact that is typically inappropriate for summary judgment[.]"  See Reed v. Friendly's Ice Cream, LLC, No. 15-cv-00298, 2016 WL 2736049, at *6 (M.D. Pa. May 11, 2016); see also Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 273 (3d Cir. 2010) (stating, "[w]hether a violation of the FLSA is willful is a question of fact that is reviewed for clear error"); Acosta v. Osaka Japan Rest., Inc., No. 17-cv-01018, 2018 WL 3397337, at *11 (E.D. Pa. July 12, 2018) (noting "the paucity of binding Third Circuit precedent in which a court granted a plaintiff's motion for summary judgment on the issue of willfulness in an FLSA case"); Acosta v. Mezcal, Inc., No. 17-cv-00931, 2019 WL 2550660, at *9 (D. Md. June 20, 2019) (stating, "[b]ecause willfulness is often tied to questions of individual knowledge and motive, willfulness findings often require credibility determinations" not appropriate at summary judgment).

Applying the above authority here, and noting the fact-intensive inquiry required to determine whether a FLSA violation is willful, the Court concludes that genuine disputes of material fact exist as to whether Defendants willfully violated the FLSA both before and after Wings Over's receipt of the Westmore Letter.  As to the period preceding Wings Over's receipt of the Westmore Letter—and even assuming, as Defendants argue, that Moreira was unaware of the specific FLSA provision that prohibits tip-sharing with employees who do not customarily

12

receive tips—a reasonable factfinder could conclude that Moreira knew that drivers were sharing unreported tips but nonetheless "fail[ed] to make adequate inquiry into whether [his employees' use of the tip jar] [wa]s in compliance with the Act."  See 5 C.F.R. § 551.104; see also Scalia v. Emp. Sols. Staffing Grp., LLC, 951 F.3d 1097, 1102 (9th Cir. 2020) (finding willfulness where employer "recklessly disregarded the very possibility that it was violating the statute" (internal quotation marks omitted)), cert. denied, 141 S. Ct. 1376 (2021).

Further, although an employer cannot willfully violate "the FLSA if it acts reasonably in determining its legal obligation," see Baugh v. CVS Rx Servs., Inc., No. 15-cv-00014, 2015 WL 12552067, at *2 (E.D. Pa. July 24, 2015), there is no evidence that Moreira ever "reviewed the tip pooling practices at [Wings Over] to ascertain whether they were lawful," see Ayres v. 127 Rest. Corp., 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998); see also Berrios v. Nicholas Zito Racing Stable, Inc., 849 F. Supp. 2d 372, 392 (E.D.N.Y. 2012) (rejecting contention that an employer cannot be held liable for willfully violating the FLSA where "it had never been informed that its pay practices violated any law").

There is also evidence of record from which a jury could conclude that Moreira had detailed knowledge of employment rules in the context of his business and was aware that drivers were required to report all tips despite his own participation in Wings Over's tip-sharing policy, which resulted in unreported tips.  Plaintiffs point to the following facts: (1) Moreira implemented an employee handbook (the "Handbook") setting forth various provisions about workers' rights and advising employees to "report all of [their] tip income," that "[t]ips are considered part of [their] wages," and that the company was required to "make certain deductions" from employees' paychecks every pay period; (2) Wings Over "is part of a national chain of restaurants"; (3) Moreira started his Wings Over franchise in 2005 and grew the

franchise from up to twenty (20) employees to close to one hundred (100) employees in 2014; and (4) Wings Over posted several notices informing employees of the requirement that they report their tips, at a time when the tip-pooling practice persisted.  (Doc. No. 127 at 8-9.)  These facts provide additional support for the Court's conclusion that a reasonable factfinder could conclude that Defendants willfully violated the FLSA.  See, e.g., Scalia v. Mejia Corp., No. 1:19-cv-00166, 2020 WL 3550011, at *4 (E.D. Va. Mar. 5, 2020) (noting that an employer's "level of experience" may be "persuasive in finding willfulness"); Beck v. Nephron Corp., No. 1:13-cv-03408, 2014 WL 12572930, at *4 (N.D. Ga. Dec. 29, 2014) (denying summary judgment where the employer defendants did not, over the course of twenty years, make an inquiry to determine its compliance with the FLSA).

Turning to the time period following Wings Over's receipt of the Westmore Letter in late 2016, Defendants argue that they could not have willfully violated the FLSA at that time because delivery drivers were subsequently (and clearly) informed that sharing tips with kitchen workers was voluntary and not required.  As Defendants note, as a general rule, a "tipped employee may voluntarily choose to share tips with an otherwise ineligible employee, so long as that tip-sharing is done without coercion by the employer."  See Walsh v. Dayemi Org., Inc., No. 21-cv-00056, 2022 WL 2291706, at *4 (S.D. Ill. June 24, 2022); see also, e.g., Kubiak v. S.W. Cowboy, Inc., No. 12-cv-01306, 2014 WL 2625181, at *2 (M.D. Fla. June 12, 2014) (same).  Although "[t]he FLSA does not define either 'coercion' or 'voluntary,'" the Department of Labor's Field Operations Handbook states that "a tipped employee may voluntarily share tips with whichever coworkers the tipped employee chooses."  See Roussell v. Brinker Int'l, Inc., 441 F. App'x 222, 230 (5th Cir. 2011) (unpublished) (quoting Dep't of Lab. Field Operations Handbook § 30d04(c), available at http://www.dol.gov/whd/ FOH/FOH_Ch30.pdf (stating that Congress

14

did not "intend[] to prevent tipped employees from deciding, free from any coercion whatever and outside of any formalized arrangement or as a condition of employment, what to do with their tips, including sharing them with whichever co-workers they please")).

Construed in a light most favorable to Plaintiffs, the evidence of record suffices to create a genuine dispute of material fact as to whether Wings Over drivers contributed to the tip jar "free of any coercion" after Wings Over received the Westmore Letter.  In the October 2016 email from a Wings Over manager to Moreira, Street, and others, the manager explained that, at the end of one shift, drivers had chosen not to tip into the jar only to change course and contribute to the tip jar after the manager informed them of "the situation while emphasizing it was voluntary."  (Doc. No. 122 at 390.)  That email alone creates a genuine dispute of material fact as to whether, despite disclaimers that tip-sharing was voluntary, Wings Over may have used a degree of coercion to persuade drivers to contribute to the tip jar.

Defendants note that Moreira, Street, and even Wilson testified that, following Wing Over's receipt of the Westmore Letter, drivers were notified that sharing tips with kitchen workers was voluntary and not required, but those facts are at odds with the October 2016 email.  Accordingly, the Court finds that a genuine dispute of material fact exists as to the issue of willfulness post-dating the Westmore Letter.  As such, the Court will deny Defendants' motion for summary judgment as to the six (6) Opt-In Plaintiffs who opted into this action between two and three years of their last dates of employment, i.e., Opt-In Plaintiffs Braucht, Gilmore, Lamb, Lieberman, Steele, and Symosky.

### 3.   Opt-In Plaintiff Zachary Keim

As to Opt-In Plaintiff Zachary Keim, Defendants do not seek summary judgment as to all of his FLSA claims.  Rather, Defendants argue that some of his claims are partially time-barred

to the extent a two-year limitations period applies. (Doc. Nos. 124 at 17, 125 at 20.) Given the Court's conclusion that a genuine dispute of material fact exists as to the issue of willfulness, the Court will deny Defendants' motion for summary judgment to the extent it is based on the contention that Keim's claims are subject to the FLSA's two-year limitations period and therefore partially time-barred.

### 4.   Named Plaintiffs (four total)

As to the four (4) Named Plaintiffs—Carts, Grove, Kreiger, and Ronald—it is undisputed that none of them filed written consents to join this action. As Defendants note, in light of the fact that the close of the collective period as defined by the Court was February 28, 2017, the FLSA's three-year limitations period expired no later than February 28, 2020, see supra, which means that any Plaintiff (named or unnamed) who failed to provide a written consent by that date is now time-barred from doing so. Defendants therefore argue that the Named Plaintiffs' FLSA claims are time-barred. The Named Plaintiffs concede that they failed to opt into the collective action and are time-barred from doing so at this time. (Doc. No. 127 at 3-6.) They argue, however, that they timely commenced this action in a dual capacity—individually and as representatives of a collective action—upon filing of the original complaint in 2017. (Id. at 3-6.)

The Court, at the outset, notes its agreement with the parties that the Named Plaintiffs, by failing to submit written consents to join this action, are "not treated as [having] consent[ed] to join the very lawsuit [they] initiated." See Stone, 935 F.3d at 152 (citing Bonilla v. Las Vegas Cigar Co., 61 F. Supp. 2d 1129, 1139 (D. Nev. 1999) (stating, "[a]lthough consents may be filed after the complaint, the action is not deemed commenced with respect to each individual plaintiff until his or her consent has been filed")). A collective action commences, "in the case of any individual claimant," on the "date when the complaint is filed," but only if two conditions are

met: (1) the claimant was "specifically named as a party plaintiff in the complaint"; and (2) the claimant's "written consent to become a party plaintiff is filed" with the complaint.  See 29 U.S.C. § 256.  The Named Plaintiffs in this case did not file written consents to become party plaintiffs under § 256.  Because more than three years have elapsed since they last worked for Wings Over, they are time-barred from opting into the collective action.

The Named Plaintiffs, however, rely on a line of authority that recognizes the possibility of "dual capacity" FLSA actions in which the plaintiffs "proceed simultaneously in individual and collective capacities."  See Ochoa v. Pearson Educ., Inc., No. 11-cv-01382, 2012 WL 95340, at *4 (D.N.J. Jan. 12, 2012).  A case often cited for this principle is Smith v. Cent. Sec. Bureau, Inc., 231 F. Supp. 2d 455 (W.D. Va. 2002),[6] in which the court stated: "where the record reveals an intent to file an individual claim, and the individual claim is timely filed, it should be allowed to continue, notwithstanding the individual plaintiff's failure to timely file a consent to join the collective action."  See id. at 477.  Because Smith brought his action "individually and on behalf of all current or former employees" of the defendant employer, the court held that "the record clearly reveal[ed] [] Smith's intent to proceed in a dual capacity."  See id. at 476-77.

Defendants argue that the Third Circuit's decision in Stone forecloses the Named Plaintiffs' contention that they brought individual FLSA claims in addition to their representative claims.  Stone filed a FLSA complaint "on behalf of herself and those similarly situated."  See

---

[6] A recent case from the same court recently stated that "several cases decided after Smith have held that the separate consent is mandatory."  See Britt v. Baird Drywall & Acoustic, Inc., No. 7:19-cv-00882, 2020 WL 6270910, at *3 (W.D. Va. Oct. 26, 2020) (opining that, in light of the "subsequent development of the law on this issue" since Smith, "it is now more reasonable to conclude that the Fourth Circuit would side with the Sixth, Seventh, and Eighth Circuits and hold that a dual capacity pleading, individually and on behalf of those similarly situated, cannot obviate the need for a consent to be filed separate from the complaint"), on reconsideration sub nom. Mendoza v. Baird Drywall & Acoustic, Inc., No. 7:19-cv-00882, 2021 WL 2435873 (W.D. Va. June 15, 2021).

Stone, 935 F.3d at 146.  She did not submit a written opt-in consent with her complaint but later

filed an affidavit that she argued constituted opt-in consent, followed by a "formal consent-to-sue

form[.]"  See id. at 146-47.   The Third Circuit held that Stone did not commence her FLSA

action until she filed the formal consent-to-sue form because the affidavit she filed did not

constitute written consent to become a party plaintiff.  Id. at 152-154.  As Defendants here

observe, Stone captioned her complaint "INDIVIDUAL AND COLLECTIVE ACTION" under

both the FLSA and state law, she titled her complaint "INDIVIDUAL, COLLECTIVE, AND

CLASS ACTION COMPLAINT," and she designated herself "Named Plaintiff."  See Stone v.

Troy Constr., LLC, No. 3:14-cv-00306 (3d Cir. filed Feb. 19. 2014), ECF. No. 1 at 1; (Doc. No.

129 at 6-9).  Defendants argue that if Stone's complaint did not assert a so-called "dual capacity"

FLSA action, then the Named Plaintiffs' complaints in this case—which are captioned

"COMPLAINT—CLASS ACTION"—must necessarily fail to assert such an action.

 While the decision in Stone may be read to support Defendants' general position, the

Third Circuit in that case did not opine on (or even mention the possibility of) a dual-capacity

FLSA claim.  Notably, however, the Third Circuit quoted from Bonilla, the reasoning of which

suggests that one can file an individual or representative FLSA action, but not both.  The court

there stated that "a collective action is an action brought on behalf of the named plaintiffs and

others similarly situated," see Bonilla, 61 F. Supp. 2d at 1137-38, and that, "[w]hen plaintiffs

have filed a 'collective action,' . . . all plaintiffs, including named plaintiffs, must file a consent

to suit with the court in which the action is brought," see id. at 1123-33 (footnote omitted).  "By

contradistinction," the court stated, "a suit which consists of a number of individual actions

joined under Rule 20(a) of the Federal Rules of Civil Procedure is not a 'collective action,' and

plaintiffs need not file a consent to suit in order to commence the action."  See id. at 1137

(collecting cases).  The court in <u>Bonilla</u>, after surveying the relevant authority, "conclude[d] that

an action is a collective action under § 216(b) where plaintiffs, on the face of their complaint,

purport to sue on behalf of themselves and others similarly situated[.]"  <u>See id.</u> at 1138-39.

  While neither <u>Stone</u> nor <u>Bonilla</u> is directly on point—<u>Stone</u> because the Third Circuit did

not address dual-capacity FLSA actions, and <u>Bonilla</u> because of the facts of that case[7]—a

handful of other courts have considered dual-capacity FLSA actions in circumstances more

analogous to the facts of this case.  Those courts, in determining whether a named plaintiff

brought a dual-capacity FLSA action, considered various factors to discern whether the record

revealed the plaintiffs' clear intentions to proceed in both capacities.  Those factors include:

(1) the manner in which a complaint is styled, the claims asserted, and the prayers for relief;

(2) whether any of the allegations in the complaint reference injuries specific to the named

plaintiffs rather than the collective generally; (3) representations from the named plaintiffs as to

whether they intended to proceed with both an individual FLSA claim and as a representative of

a FLSA collective; and (4) whether the named plaintiffs are the only remaining plaintiffs.  <u>See,

e.g.</u>, <u>Ochoa</u>, 2012 WL 95340, at *4; <u>Green v. Platinum Restaurants Mid-Am., LLC</u>, No. 3:14-cv-

00439, 2020 WL 1452724, at *5 (W.D. Ky. Mar. 25, 2020); <u>Carter v. Sungard Availability

Servs., LP</u>, No. 17-cv-03639, 2019 WL 1114896, at *4 (E.D. Pa. Mar. 11, 2019); <u>Perella v.

Colonial Transit, Inc.</u>, 148 F.R.D. 147, 149 (W.D. Pa. 1991) (holding plaintiff timely

commenced individual FLSA action when she filed her complaint, where "plaintiff, and all

others similarly situated as class members, [we]re barred from pursuing an FLSA class action"),

---

[7]  The plaintiffs in <u>Bonilla</u> asserted claims "on behalf of the named plaintiffs and all other
employees [] similarly situated," <u>see</u> <u>Bonilla</u>, 61 F. Supp. 2d 1129, whereas the Named Plaintiffs
here assert claims "<u>individually</u> and on behalf of all similar situated individuals" (Doc. Nos. 1 at
1, 24-2 at 1) (emphasis added).

aff'd, 977 F.2d 569 (3d Cir. 1992).

Of the relatively scant authority found by the Court and referenced by the parties on the issue of dual-capacity FLSA actions, a handful involved complaints that were purported to have been brought "individually" and on behalf of similarly situated individuals.  Two cases in which courts concluded that plaintiffs asserted a dual-capacity claim are the Western District of Virginia's decision in Smith, and Depalma v. Scotts Co., LLC, No. 13-cv-07740, 2019 WL 2206087 (D.N.J. May 22, 2019).  The Smith decision, discussed, supra, turned on the fact that Smith had alleged claims "individually and on behalf of others," which the court found was "open only to one interpretation, namely, that Smith was attempting to proceed in a dual capacity."  See Smith, 231 F. Supp. 2d at 461.  Likewise, in Depalma, the court found that by "bringing suit 'individually and on behalf of all other similarly situated employees,'" the named plaintiffs had "manifested a clear intent to bring their claims in a dual capacity."  See Depalma, 2019 WL 2206087, at *5 (quoting record).  Yet Depalma is distinguishable from the instant matter—and from Smith—in that the court there broadly stated that the amended complaint clearly "put [the defendant employer] on notice that [the] named plaintiffs had brought an individual claim[,]" see id., the amended complaint included a section entitled "FACTUAL ALLEGATIONS PERTAINING TO PLAINTIFFS," and the sole count alleged was a FLSA claim without any indication that it was being pursued in a collective capacity, see Depalma v. The Scotts Co., LLC, No. 1:13-cv-07740 (D.N.J. filed Feb. 5, 2014), ECF No. 1 at 8-10.

Several courts, on the other hand, have held that named plaintiffs did not pursue dual-capacity claims despite the fact that they stated that they were asserting claims both "individually" and in a representative capacity.  See Green, 2020 WL 1452724, at *5 (holding that the complaint "only allege[d] a collective claim," where the prayer for relief was sought on

behalf of "[p]laintiffs, individually and on behalf of all other similarly-situated" employees); Reynolds v. Wyndham Vacation Resorts, Inc., No. 4:14-cv-02261, 2016 WL 362620, at *2 (D.S.C. Jan. 29, 2016) (finding it "abundantly clear that [p]laintiffs intended to file this action as a collective action" where their "original complaint explicitly state[d] it is a 'PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT,'" although it was purportedly brought "individually and on behalf of other employees similarly situated" (quoting record)); Faust v. Comcast Cable Commc'ns Mgmt., LLC, No. 10-cv-02336, 2013 WL 5587291, at *3 (D. Md. Oct. 9, 2013) (concluding that a complaint filed by plaintiffs "Individually, and on Behalf of All Others Similarly Situated," did not "sufficient[ly] [] put the employer and the Court on notice of an individually-filed action"); Thomas v. Talyst, Inc., No. 07-cv-00202, 2008 WL 570806 (W.D. Wash. Feb. 28, 2008) (holding named plaintiff did not commence an individual-capacity FLSA action where the complaint was entitled "FLSA Collective Action" and "contain[ed] a '[c]lass [f]acts section,'" and where the plaintiff "reaffirmed the collective action nature of his claims in the joint status report and discovery plan" and "his initial disclosures" (quoting record)).

    In this case, both the original and amended complaints contain captions that include the Named Plaintiffs' names followed by "individually and on behalf of all other similarly situated individuals." (Doc Nos. 1 at 1, 24-2 at 2.) The complaints also reference the term "individually" four more times. (Doc. Nos. 1, 24-2.) However, both complaints are styled "COMPLAINT— CLASS ACTION," and both assert that "this [is a] collective and class action lawsuit," that the Named Plaintiffs "bring this action for violations of the FLSA as a collective action," and that the Named Plaintiffs "should be permitted to bring this action as a collective action." (Doc. Nos. 1 at 1 & ¶¶ 11, 25, 32, 24-2 at 1 & ¶¶ 16, 30, 37.) The complaints set forth "Collective Action Allegations" but do not include a section including allegations specific to any Named Plaintiffs.

21

(Doc. Nos. 1 at 6-7, 24-2 at 7-8.)  The only count in either complaint that pertains to FLSA violations asserts a cause of action for "COLLECTIVE FAIR LABOR STANDARDS ACT VIOLATIONS," and the prayers for relief seek relief on behalf of all Plaintiffs without any discussion of the Named Plaintiffs' individual bases for relief.  (Doc. Nos. 1 at 10-13, 24-2 at 11-13, 15.)  The Court also notes that, during the deposition of Named Plaintiff Carts, his counsel, referencing this action, represented, "it's a collective action," and acknowledged that he "chose to file a collective action."  (Doc. No. 50-1 at 11.)

Consideration of the above circumstances compels the Court to conclude that the Named Plaintiffs—to the extent the Third Circuit would recognize the potential for a dual-capacity claim in which a named plaintiff need not always file opt-in consent—never clearly indicated an intent to pursue a dual-capacity FLSA action.  Cf. Ochoa, 2012 WL 95340, at *4 (holding that complaint alleged a collective claim where the complaint was brought "on behalf of plaintiffs" and others and there were only some references to "individual" throughout the complaint); Green, 2020 WL 1452724, at *5 (finding complaint "only allege[d] a collective claim" where the prayer for relief was sought on behalf of "[p]laintiffs, individually and on behalf of all other similarly-situated" employees); Carter, 2019 WL 1114896, at *4 (holding that the named plaintiff asserted individual-capacity claim within limitations period, where the plaintiff brought claims only in his own name, and "[plaintiff]-specific" allegations provided sufficient "notice of his intent to pursue an individual claim"); Matuska v. NMTC, Inc., 10-cv-03529, 2012 WL 1533779, at *3 (D.N.J. Apr. 30, 2012) (concluding that the named plaintiffs, who captioned their complaint by listing their names as plaintiffs, without indicating "individually" or "on behalf of," asserted a collective action  where they "included no language and provided no evidence suggesting that they were proceeding individually"); Perella, 148 F.R.D. at 149.

On the record here, the Court has been presented with no basis upon which to conclude that the Named Plaintiffs provided notice that they clearly intended to pursue a dual-capacity FLSA claim.  To be sure, there are references in the complaint to "individually," and the Named Plaintiffs are described as pursuing claims "individually" and on behalf of others, but the two complaints filed in this action indicate that the Named Plaintiffs chose to pursue a FLSA collective action only.  Depalma is distinguishable on its facts, and the Western District of Virginia's decision in Smith does not include any reasoning that would enable the Court to determine whether the pleadings in that case were similar to those in this case.  For all these reasons, the Court declines to conclude that Named Plaintiffs provided notice that they clearly intended to proceed in both individual and representative capacities, and the Court will therefore grant Defendants' motion for summary judgment as to the Named Plaintiffs' FLSA claims.

### C.      Plaintiffs' State Law Claims Against the Named Plaintiffs

Finally, Defendants assert that, if the Court concludes, as it has, that Defendants are entitled to summary judgment as to the Named Plaintiffs' FLSA claims, the Court should decline to exercise jurisdiction over the Named Plaintiffs' state law claims.  The Court notes, as an initial matter, that Defendants do not address the merits of the Named Plaintiffs' state law claims under the Rule 56 summary judgment standard.  (Doc. No. 125 at 16-17.)  Rather, they argue only that the Court should decline to exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).  (Id.)  As a general rule, arguments not raised in a party's opening briefing are deemed waived.  See, e.g., Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp., 26 F.3d 375, 398 (3d Cir. 1994) (stating that "[a]n issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring that issue before this court" (internal quotation marks omitted)).  Here, Defendants have

argued only that the Court should decline to exercise supplemental jurisdiction over the Named

Plaintiffs' state law claims under 28 U.S.C. § 1367(a).  For that reason alone, the Court could

properly conclude that Defendants have waived any contention that they raised in challenging

the Named Plaintiffs' FLSA claims asserted in this case, i.e., that the claims are untimely.

Nevertheless, any challenge to the Named Plaintiffs' state law claims on the basis of

untimeliness would be unavailing.  Unlike FLSA actions—in which named plaintiffs must file

consents to join the action in order to commence the action as to their respective claims within

the FLSA's limitations period—Rule 23 does not require named plaintiffs to opt into an action to

timely commence the action as to each respective named plaintiff.  See Fed. R. Civ. P. 23.

Further, as a general matter, "named plaintiffs [who commence a] Rule 23 action . . . can []

pursue their original, timely filed individual claims in the first case, after class certification has

been denied," see Weitzner v. Sanofi Pasteur Inc., 909 F.3d 604, 611 (3d Cir. 2018), and "[b]y

filing a class complaint within the statutory period," named plaintiffs are deemed to have

"notifie[d] the defendants . . . of the substantive claims being brought against them," as well as

"the number and generic identities of the potential plaintiffs who may participate in the

judgment," see California Pub. Emps' Ret. Sys. v. ANZ Sec., Inc., 137 S. Ct. 2042, 2051 (2017)

(second alteration in original) (internal quotation marks omitted).  Thus, there is no inconsistency

in this Court's conclusions that the Named Plaintiffs did not timely commence their FLSA

claims but timely commenced their state law claims.[8]  See id.; see also Huffman v. Prudential

Ins. Co. of Am., No. 2:10-cv-05135, 2018 WL 1281901, at *3 (E.D. Pa. Mar. 12, 2018)

---

[8] Pennsylvania Minimum Wage Act "claims are subject to the three-year statute of limitations
contained in Pennsylvania Wage Payment and Collections Law[.]"  See Herron v. Inv. Pros. Inc.,
No. 15-cv-01664, 2016 WL 6652756, at *3 (W.D. Pa. Nov. 9, 2016) (citing 43 P.S. § 260.9a(g);
Smith v. Bank of N.Y. Mellon Corp., 10-cv-00678, 2011 WL 836858 (W.D. Pa. Jan. 20, 2011);
Caucci v. Prison Health Servs., Inc., 153 F. Supp. 2d 605, 610 (E.D. Pa. 2001)).

(concluding that, if "the Third Circuit reversed [the court's] decision to certify the class, the named [p]laintiffs' claims would proceed to trial as previously planned before th[e] [c]ourt granted class certification"); Davidson v. U.S. Steel Corp., 104 F.R.D. 1, 2 (W.D. Pa. 1984) (noting that, "[i]f any of the [Rule 23 class action] prerequisites is not met, the named plaintiffs cannot maintain a class action but may proceed to individually litigate their claims").

Turning to Defendants' contentions regarding supplemental jurisdiction, federal district courts may exercise supplemental jurisdiction over state law claims where they are "so related" to the federal claims that "they form part of the same case or controversy." See 28 U.S.C. § 1367(a). When the federal claims have all been dismissed, however, the district court "may decline to exercise supplemental jurisdiction." See id. § 1367(c)(3). Here, the Court concludes that the Named Plaintiffs' state law claims—asserted under Pennsylvania's Minimum Wage Act and Wage Payment and Collection Law—are "so related" to the FLSA collective claims remaining in this case that "they form part of the same case or controversy." See id. § 1367(a). Defendants do not argue that the claims are insufficiently related and instead invoke the general rule that, "[a]bsent extraordinary circumstances, jurisdiction [over claims based on state law] should be declined where the federal claims are no longer viable." See Kalick v. Nw. Airlines Corp., 372 F. App'x 317, 322 (3d Cir. 2010) (unpublished) (quoting Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984)). Several Opt-In Plaintiffs' federal claims are still viable, and both the Opt-In Plaintiffs' FLSA collective claims and the Named Plaintiffs' state law claims involve overlapping issues, facts, and parties, and turn on the same issue, i.e., the extent to which Defendants required their delivery drivers to share tips in violation of the FLSA and whether they did so willfully. Accordingly, the Court will exercise its discretion to retain jurisdiction over the Named Plaintiffs' state law claims under § 1367(a).

**IV.     CONCLUSION**

For all the above reasons, the Court will grant Defendants' motion for summary judgment as to the FLSA claims asserted by the Named Plaintiffs and Opt-In Plaintiffs Amundson, Butterbaugh, Crosier, Floris, Galantino, Gardner, Gast, Henshaw, Hoffman, Jr., Kepler, Londõno, Munoz, Reap, Sangare, Smoyer, Stouffer, and Troxwell.  The Court will also deny Defendants' motion for summary judgment as to the FLSA claims asserted by Opt-In Plaintiffs Braucht, Gilmore, Keim, Lamb, Lieberman, Steele, and Symosky.  Thus, the claims that remain are as follows: (1) the FLSA claims asserted by Opt-In Plaintiffs Braucht, Gilmore, Keim, Lamb, Lieberman, Steele, and Symosky; and (2) the state law claims asserted by the Named Plaintiffs under Pennsylvania's Minimum Wage Act and Wage Payment and Collection Law.

An appropriate Order follows.