**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TY CARTS, <u>et al.</u>, individually and | : | |
| on behalf of all other similarly situated | : | |
| individuals, | : | |
|     Plaintiffs | : | No. 4:17-cv-00915 |
| | : | |
|      v. | : | (Judge Kane) |
| | : | |
| WINGS OVER HAPPY VALLEY MDF, | : | |
| LLC d/b/a WINGS OVER HAPPY | : | |
| VALLEY, <u>et al.</u>, | : | |
|     Defendants | : | |

<u>**MEMORANDUM**</u>

Before the Court is a motion for settlement approval of a Fair Labor Standards Act

("FLSA") collective action brought by Plaintiffs Ty Carts, Lewis Grove, Colin Krieger, and

Branden Ronald (collectively, "Named Plaintiffs").  (Doc. No. 145.)  Defendants Wings Over

Happy Valley MDF, LLC, and Steven C. Moreira (collectively, "Defendants") concur in the

motion.  (<u>Id.</u> at 1.)  Along with Plaintiffs' motion, the Court has considered their brief in support

of the motion (Doc. No. 146), the parties' proposed settlement agreement ("Settlement

Agreement") (Doc. No. 146-1), and the declaration of Plaintiffs' attorney David S. Gaines, Jr.

("Plaintiffs' Counsel") (Doc No. 146-2).  The Court will grant the motion.

**I.**    **BACKGROUND**

Named Plaintiffs initiated this collective action in 2017, asserting claims under the FLSA,

29 U.S.C. §§ 201–219, as well as state law,[1] alleging that Defendants required their delivery

drivers to share tips with kitchen employees in violation of 29 U.S.C. § 203(m) (prohibiting "the

---

[1] An additional plaintiff was also named in the original complaint, but he was omitted from
Named Plaintiffs' amended complaint.  <u>See</u> (Doc. Nos. 1, 24-2).

pooling of tips" except "among employees who customarily and regularly receive tips").  (Doc. No. 1 ¶¶ 18–21.)  Plaintiffs further alleged that Defendants insisted upon this arrangement to "avoid . . . pay[ing] their kitchen workers an appropriate wage."  (Id. ¶ 21.)  After unsuccessful mediation efforts and the filing of an amended complaint (Doc. Nos. 24-2, 37–39), the Court conditionally certified Plaintiffs' FLSA collective class (Doc No. 72).  Since the commencement of this action, twenty-four (24) plaintiffs filed consent forms to become party plaintiffs ("Opt-In Plaintiffs") (Doc. Nos. 7–8, 31, 44, 60, 64–70, 79–89, 91).  Seventeen of them failed to file consent forms within the applicable limitations period, and none of the Named Plaintiffs filed a consent form.  See (Doc. No. 130).  Accordingly, the Court granted Defendants' later-filed motion for partial summary judgment, granting judgment in their favor as to the Opt-In Plaintiffs' and Named Plaintiffs' FLSA claims, leaving seven Opt-In Plaintiffs' FLSA claims and Named Plaintiffs' state law claims.  (Doc. No. 131.)

After the Court granted partial summary judgment in Defendants' favor, the Court held a status conference during which counsel for both parties indicated that they were gathering information upon which to calculate damages to prepare for a settlement conference.  The Court referred the case for mediation, and Chief Magistrate Judge Mehalchick assigned the case to Magistrate Judge Arbuckle for the purpose of conducting a settlement conference.  (Doc. No. 133.)  The Court also set a trial commencement date of August 15, 2023.  (Doc. No. 134.)  About two months later, in April 2023, Magistrate Judge Arbuckle reported that the parties had a reached a settlement.  At a status conference held the same month, the parties indicated that they would be seeking approval of their proposed settlement agreement, and the Court set a briefing schedule for a motion to approve the settlement.  (Doc. No. 142.)

Plaintiffs' Counsel filed the pending motion for settlement approval (Doc. No. 145) on

June 8, 2023, along with a brief in support (Doc. No. 146), a copy of the Settlement Agreement (Doc. No. 146-1), and Plaintiffs' Counsel's declaration (Doc. No. 146-2).  The Settlement Agreement contemplates disbursement of one hundred six thousand three hundred eighty-eight dollars and eighteen cents ($106,388.18), from which $50,000.00 will be paid to Plaintiffs' attorneys for fees and costs.  (Doc. No. 146-1 at 3.)

## II.   LEGAL STANDARD

The Fair Labor Standards Act was designed to "protect certain groups of the population from substandard wages and excessive hours."  See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945).  The FLSA is "uniquely protective," see Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 207 (2d Cir. 2015), as "FLSA rights cannot be abridged by contract or otherwise waived," see Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981).  To effectuate the FLSA's purposes, cases arising under the statute may be settled only where (1) the Secretary of Labor supervises an employer's payment of unpaid wages to employees or (2) a district court enters a court-approved, stipulated judgment.  See 29 U.S.C. § 216(b)–(c); Cuttic v. Crozer-Chester Med. Ctr., 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012); Brumley v. Camin Cargo Control, Inc., No. 08-cv-01798, 2012 WL 1019337, at *1 (D.N.J. Mar. 26, 2012).  When the parties to an FLSA action seek district court approval of a settlement, the court's role is to "serve[] as gatekeeper to ensure[] that the parties are not negotiating around clear FLSA requirements."  See Acevedo v. Brightview Landscapes, LLC, No. 3:13-cv-02529, 2017 WL 4354809, at *13 (M.D. Pa. Oct. 2, 2017) (internal quotation marks omitted).

The United States Court of Appeals for the Third Circuit has not addressed whether and to what extent a district court must consider certain factors in evaluating FLSA settlements.  Courts within this circuit have nevertheless relied on the considerations set forth in Lynn's Food

Stores, Inc. v. United States, 679 F.2d 1350, 1354–55 (11th Cir. 1982).  See, e.g., Solkoff v. Pa. State Univ., 435 F. Supp. 3d 646, 652 (E.D. Pa. 2020).  The court in Lynn's Food Stores held that a district court may approve an FLSA settlement that is a "fair and reasonable resolution of a bona fide dispute" and "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages."  See 679 F.2d at 1354–55.  In addition to considering the analysis in Lynn's Food Stores, courts in the Third Circuit also analyze "whether the settlement furthers or impermissibly frustrates the implementation of the FLSA in the workplace."  See Bettger v. Crossmark, Inc., No. 13-cv-02030, 2015 WL 279754, at *4 (M.D. Pa. Jan. 22, 2015) (internal quotation marks omitted).  Once a court has approved the substantive terms of a settlement, it must then address the reasonableness of any attorneys' fees stipulated to by the parties as part of the settlement agreement.  See In re Chickie's & Pete's Wage and Hour Litig., No. 12-cv-06820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014).  If all the foregoing standards are satisfied, the Court may approve the parties' settlement.

## III.   DISCUSSION

In line with Lynn's Food Stores, the Court will first address whether the Settlement Agreement is a product of a bona fide dispute.  See 679 F.2d at 1354.  The Court will then discuss whether the settlement is "fair and reasonable" under the applicable legal framework and whether the release provision contained in the Settlement Agreement "impermissibly frustrates" the purposes of the FLSA.  See Bettger, 2015 WL 279754, at *4.

### A.   Bona Fide Dispute

A bona fide dispute involves "factual issues rather than legal issues such as the [FLSA's] coverage and applicability."  See Creed v. Benco Dental Supply Co., No. 3:12-cv-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013) (internal quotation marks omitted).  The parties

4

must show that the "resolution of many of the relevant legal issues would turn on the underlying, disputed facts."  See Kapolka v. Anchor Drilling Fluids USA, LLC, No. 2:18-cv-01007, 2019 WL 5394751, at *3 (W.D. Pa. Oct. 22, 2019).  Courts have found bona fide disputes where the parties disagree as to the plaintiff's key allegations.  See, e.g., Carney v. Travelers Aid Soc'y of Phila., No. 19-cv-03599, 2020 WL 703684, at *3 (E.D. Pa. Feb. 11, 2020); Kapolka, 2019 WL 5394751, at *2–3.

Having presided over the years-long proceedings in this case and ruled upon numerous motions, some dispositive, and upon consideration of Plaintiffs' allegations and Defendants' answer thereto (Doc. Nos. 24-2, 33), the Court finds that the settlement resolves a bona fide FLSA dispute.  The issues at the core of the parties' dispute are factual, as reflected in the Court's Memorandum resolving Defendant's motion for summary judgment, and turn on whether Defendants required delivery drivers to share their tips with kitchen employees who were not permitted to collect tips under the FLSA.  Additionally, the process by which the parties reached settlement—a lengthy settlement conference mediated by Magistrate Judge Arbuckle, accompanied by extensive negotiations—further supports that the dispute is bona fide.

### B.   Fairness and Reasonableness of the Settlement Agreement and Furtherance of the FLSA

The Court turns to "whether the agreement is fair and reasonable" to Plaintiffs and "whether the settlement furthers or impermissibly frustrates the implementation of the FLSA in the workplace."  See Bettger, 2015 WL 279754, at *4 (internal quotation marks omitted).

### 1.   Fairness and Reasonableness of the Settlement Agreement

In deciding whether a FLSA settlement agreement is "fair and reasonable," courts in this circuit apply the factors discussed in Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975).  See Deitz v. Budget Renovations and Roofing, Inc., No. 4:12-cv-00718, 2013 WL 2338496, at *5–7

5

(M.D. Pa. May 29, 2013) (applying the Girsh factors to an FLSA collective action settlement);

see also, e.g., Starnes v. Amazon.com, Inc., No. 23-cv-00484, 2023 WL 3305159, at *6 (E.D. Pa.

May 8, 2023). But "rigid application" of the factors is unnecessary in the FLSA collective action

context. See Kapolka, 2019 WL 5394751, at *3. The nine Girsh factors are:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

See Girsh, 521 F.2d at 157.

The Court's analysis of the Girsh factors in this case supports a finding that the

Settlement Agreement is fair and reasonable. Consideration of the first six factors counsels in

favor of approving the Settlement agreement for the following reasons:[2] (1) continuing with

litigation would be relatively complex, likely involve additional, substantial expenses, and

require not only a trial involving numerous witnesses but also pretrial motion practice regarding,

e.g., final certification of the collective; (2) the parties represent that "[a]ll Plaintiffs have

participated in the approval" of the Settlement Agreement and "agree to its terms"; (3) the parties

reached a settlement only after years of litigation and upon the completion of fact discovery;

(4) there are risks of establishing liability given the factual disputes as to whether Defendants

compelled their drivers to share tips in violation of the FLSA and whether they did so willfully;

(5) as the parties acknowledge, "[t]o calculate the damages owed from the alleged wrongful

---

[2]  The Court finds neutral the seventh Girsh factor, "the ability of the defendants to withstand a greater judgment," see Girsh, 521 F.2d at 157, given the parties' representation that "Defendants have stated throughout that they have the resources to fund any reasonable judgment in this matter" (Doc. No. 146 at 12).

takings of the tip jar monies, the parties would need to recreate a history of how much money was placed into a tip jar, which Defendants did not monitor, years ago," and several employees "worked during any given shift," posing a risk to recovery of the same damages the settlement fund offers; and (6) the parties agree that there are risks of maintaining the collective action, as Court has not yet finally certified the collective.  (Doc. No. 146 at 10–12.)

Addressing the eighth and ninth Girsh factors, the settlement fund appears reasonable. Although "calculating the best possible recovery for the plaintiffs is exceedingly speculative," courts can judge reasonableness by looking at the terms of the settlement versus the risks of continued litigation.  See Deitz, 2013 WL 2338496, at *7 (internal quotation marks omitted). The parties here reached their settlement after engaging in extensive discovery in service of calculating damages, allowing counsel to accurately assess the value of the claims asserted by the Named and Opt-In Plaintiffs.  The Settlement Agreement allocates to each Plaintiff a "payment of $6.43 per hour" for back wages, plus liquidated damages.  (Doc. No. 146 at 13); see (Doc. No. 146-1 at 12).  The proposed recovery strikes the Court as reasonable, especially given the discovery available to the parties and the risk that Plaintiffs would recover nothing at trial.

### 2.    Narrow Tailoring of the Release Provision

The Court next evaluates "whether the settlement furthers or impermissibly frustrates the implementation of the FLSA in the workplace," see Bettger, 2015 WL 279754, at *4, and finds that it does not.  Paragraph 6 of the parties' Settlement Agreement—regarding the release of claims against Defendants (Doc. No. 146-1 at 5)—is "limited to claims related to Plaintiff[s'] employment with Defendant[s] arising before the date of the proposed Settlement Agreement." See Brown v. U.S. Postal Serv., No. 20-cv-05624, 2021 WL 5083981, at *5 (E.D. Pa. Nov. 2, 2021).  "Such a narrowly tailored release does not frustrate implementation of the FLSA."  See id.; see (Doc. No. 146-1 at 5) (providing, e.g., for release of claims "claims, demands, actions,

causes of action, other liabilities, and/or damages that have occurred on or before the effective

date of this Agreement, which arise from any alleged violation of the FLSA, the PWMA, and the

PWPCL"). The Settlement Agreement, moreover, does not contain any confidentiality

provisions. See Brown, 2021 WL 5083981, at *5 (citing Stickel v. SMP Servs. LLC, 2016 WL

827126, at *2 (M.D. Pa. Mar. 1, 2016), where the court found a confidentiality provision

frustrated the FLSA's implementation)) (finding no frustration of FLSA after "examin[ing] the

release of claims in the proposed Settlement Agreement and the absence of any confidentiality

provision, a feature of some FLSA settlement agreements of which courts have repeatedly

disapproved"). In sum, the Court concludes that the Settlement Agreement's release provision

does not impermissibly frustrate implementation of the FLSA.

### C.    Attorneys' Fees

In addition to the terms of the settlement, the Court must determine whether the

attorneys' fees stipulated to in the Settlement Agreement are reasonable. Under the FLSA, the

court "shall, in addition to any judgment awarded to the [plaintiffs] . . . allow a reasonable

attorney's fee to be paid by the defendant, and costs of the action." See 29 U.S.C. § 216(b).

Courts within the Third Circuit typically use a percentage-of-recovery method for calculating

attorneys' fees, cross-checked with the fee amount calculated under the lodestar method. See

Ortiz v. Freight Rite, Inc., No. 1:21-cv-01060, 2021 WL 5988582, at *3 (M.D. Pa. Dec. 17,

2021). This method "awards a fixed portion of the settlement fund to counsel." See Solkoff, 435

F. Supp. 3d at 658. A percentage-of-recovery analysis requires that the Court consider factors

commonly referred to as the Gunter factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the
> presence or absence of substantial objections by members of the class to the
> settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the
> attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of

nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

See Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000).

The Court addresses each factor below.  The Court first highlights, however, that Plaintiffs' Counsel's firm has waived any requirement that Plaintiffs reimburse costs associated with this litigation, that counsel worked 300 hours in connection with this case, and that the firm did not charge for staff time dedicated to the case.  (Doc. No. 146-2 ¶¶ 16–18.)

### 1.    The Size of the Fund Created and the Number of Persons Benefitted

In percentage-of-recovery cases, as the size of a fund increases, the percentage awarded to counsel typically decreases.  See In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 736 (3d Cir. 2001).  This rule is intended to prevent plaintiff's attorneys from receiving a windfall that has "no direct relationship to the efforts of counsel" in cases with extremely large settlement funds.  See In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions, 148 F.3d 283, 339 (3d Cir. 1998) (quoting In re First Fidelity Bancorporation Sec. Litig., 750 F. Supp. 160, 164 n.1 (D.N.J. 1990)).

In this case, the parties agree that Plaintiffs' Counsel is entitled to $50,000—roughly 46.99%—of the $106,388.18 settlement fund, which amounts to $167 per hour of work performed in connection with this six-year-old case.  (Doc. Nos. 146 at 14–17; 146-1 at 3–4.)  The settlement fund is not extremely large, and just over half of it will be distributed among a relatively small pool of remaining Plaintiffs (eleven in total), compensating them for back pay and providing liquidated damages.  Given that Plaintiffs' Counsel and his firm have worked roughly 300 hours over six years litigating this case (Doc. No. 146-2 ¶¶ 14, 16), the Court finds no reason to believe that approving the proposed attorneys' fees would result in a windfall out of proportion to the efforts of counsel to bring the case to a conclusion.  This factor therefore

weighs in favor of approving the amount of attorneys' fees requested.

### 2.      Substantial Objections by Members of the Class to the Settlement Terms

Where few to no members of an FLSA collective object to the terms of a settlement agreement, the second <u>Gunter</u> factor weighs in favor approving the attorneys' fees requested. <u>See</u> <u>In re Rite Aid Corp. Sec. Litig.</u>, 396 F.3d 294, 305 (3d Cir. 2005).  Here, no Named or Opt-In Plaintiff has objected to the attorneys' fees to be paid from the settlement fund.  This factor, therefore, also weighs in favor of approval of the attorneys' fees.

### 3.      The Skill and Efficiency of the Attorneys

As to the third factor, the quality of attorneys and the representation they provided is judged by "the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel," and "the skill and professionalism with which counsel prosecuted the case."  <u>See</u> <u>In re Ikon Off. Sols., Inc., Secs. Litig.</u>, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (internal quotation marks omitted).  In this case, Plaintiffs' Counsel obtained a favorable result for the eleven remaining Plaintiffs, <u>see</u> <u>supra</u>, and expended much time and effort to obtain that result, as reflected in: the pleadings; the periods of discovery (both pre- and post-certification of the FLSA collective); and the motion practice necessitated by the action, <u>e.g.</u>, Plaintiffs' motion to dismiss counterclaims asserted against a former named plaintiff, <u>see</u> <u>supra</u> at <u>n.1</u>, motions for conditional certification of the FLSA collective and (although unsuccessful) Rule 23 class certification, and two motions for equitable tolling, as well as Defendants' motions, including for partial summary judgment following the exchange of additional discovery.  (Doc. Nos. 11, 41, 47–48, 74, 93, 123.)  Further, Plaintiffs' Counsel's declaration represents that he has substantial experience in wage-and-hour litigation.  (Doc. No. 146-2.)  While Plaintiffs' Counsel did file equitable tolling motions that the Court denied due to

failures to secure timely opt-in notices, on balance, the Court finds that this factor weighs in favor of approving the proposed amount of attorneys' fees, or is neutral.

### 4.        The Complexity and Duration of the Litigation

This action, commenced in 2017, has clearly been pending for a long duration, and FLSA collective actions are, by their nature, complex.  See Brumley, 2012 WL 1019337, at *11 (noting that "FLSA claims and wage-and-hour law enforcement through litigation has been found to be complex by the Supreme Court and lower courts").  The Court has already set forth, supra, the work involved in bringing this case to settlement and will not rehash it here.  While this is hardly the most complex FLSA litigation, the Court finds that this factor weighs somewhat in favor of awarding Plaintiffs' Counsel the requested fee amount.

### 5.        The Risk of Nonpayment

Plaintiffs' Counsel ran a risk of nonpayment, as his firm agreed to take this case solely on a contingency basis and would have received nothing had there been an unfavorable verdict at trial.  (Doc. No. 146-2 ¶ 11); see Williams v. Sweet Home Healthcare, LLC, No. 16-cv-02353, 2018 WL 5885453, at *6 (E.D. Pa. Nov. 9, 2018) (finding retention on a contingency qualified as a "risk of non-payment" under the fifth Gunter factor).  Additionally, Plaintiffs acknowledge the risk of decertification and of not recouping all back wages given the difficulty recreating hours worked and by whom.  See Wood, 2021 WL 1945809, at *12 (noting that risk of non-payment exists under Gunter when defendants "have colorable defenses sounding in fact and law").  The Court agrees that this factor supports the requested fee award.

### 6.        The Amount of Time Expended by Plaintiffs' Counsel

Settlement in this case is the result of an investment of about 300 hours by Plaintiffs' Counsel.  (Doc. No. 146-2 ¶ 16.)  This is an appropriate amount of time, considering the length of the litigation, amount of discovery completed, number of motions necessitated by the

circumstances of this case, and the complexity of the subject matter.  See, e.g., Rouse v. Comcast Corp., No. 14-cv-01115, 2015 WL 1725721, *13 (E.D. Pa. Apr. 15, 2015) (finding an outlay of 221.45 attorney hours "significant" in a wage-and-hour collective and class action litigated for approximately fourteen months);  Kapolka, 2019 WL 5394751, at *10 (300 hours).  Therefore, the Court finds this factor weighs in favor of the requested fee award.

### 7.      Awards in Similar Cases

Plaintiffs' Counsel requests a fee of 46.99% of the settlement fund, which amounts to $50,000.  (Doc. No. 76 at 10.)  The requested fee, as measured by percentage of overall recovery, is slightly above awards in other FLSA collective actions within the Third Circuit.  See Mabry v. Hildebrandt, No. 14-cv-05525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (collecting cases to show that in the Third Circuit, "the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%").  Nevertheless, the mere 2% increase over and above what would ordinarily be the upper limit of an acceptable fee percentage is justified in this case given the years of work required by it.  Accordingly, the Court finds that this factor supports the reasonableness of the fee award requested or is, at worst, neutral but, when applied in light of the lodestar cross-check, infra, appears eminently reasonable.

### 8.      Lodestar Cross-Check

Courts in the Third Circuit confirm the reasonableness of a percentage-of-recovery fee award by cross-checking the requested award against the attorneys' lodestar amount.  See Ortiz, 2021 WL 5988582, at *3.  The lodestar is calculated by multiplying the number of hours reasonably worked on a case by the attorneys' reasonable hourly billing rates.  See In re Rite Aid, 396 F.3d at 305.  To determine the reasonableness of an attorney's hourly rate, "the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience, and reputation."  See Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  The party seeking fees bears the burden of establishing the reasonableness of the hourly rate.  See Washington v. Phila. Cnty. Ct. of Comm. Pl., 89 F.3d 1031, 1035 (3d Cir. 1996).  If the party fails to do so, then the court may use its discretion to set an hourly rate.  See id. at 1036.  To establish the reasonable number of hours worked by counsel on a case, courts typically examine the records provided by counsel and then exclude time that is "excessive, redundant, or otherwise unnecessary."  See McKenna v. City of Phila., 582 F.3d 447, 455 (3d Cir. 2009).  However, the lodestar cross-check does not require "mathematical precision" or "bean-counting," and the district court "need not review actual billing records."  See In re Rite Aid, 396 F.3d at 306–07.

In a percentage-of-recovery case, courts typically apply a multiplier to the lodestar to account for factors such as the risk of taking a case on a contingent basis and skill with which counsel litigated the case.  See id. at 305–06.  The multiplier is calculated by dividing the requested fee award by the lodestar amount calculated by the Court.  See Haught v. Summit Res., No. 1:15-cv-00069, 2016 WL 1301011, at *12 (M.D. Pa. Apr. 4, 2016).  Multipliers between one and three are often applied to contingency-fee cases, depending on the circumstances of the litigation.  See In re Cendant Corp., 243 F.3d at 742 ("strongly suggest[ing] that a lodestar multiplier of 3 . . . is the appropriate ceiling for a fee award"); In re Rite Aid, 396 F.3d at 306–07 (explaining that "[t]he multiplier is a device that attempts to account for the . . . risk involved in a particular case and the quality of the attorneys' work").

Plaintiffs' Counsel asserts that his firm spent 300 hours on this litigation and typically employs a billing rate of $350 per hour.  (Doc. No. 146-2 ¶¶ 16, 18.)  The Court is inclined to accept as facially reasonable counsel's representation of the total hours expended, given that this

case has been active for several years and has progressed through several time-consuming stages of litigation. The Court nonetheless subjects the "hourly rates" set by Plaintiffs' Counsel to additional scrutiny. The Court notes that rates set by plaintiffs' attorneys in wage-and-hour litigation are usually speculative and "untested by the marketplace," as such attorneys often work exclusively on a contingency basis. See Sakiko Fujiwara v. Sushi Yasuda, Ltd., 58 F. Supp. 3d 424, 437 (S.D.N.Y. 2014).

Given Plaintiffs' Counsel's experience litigating cases involving the same or similar subject matter for about thirteen years (seven at the commencement of this litigation), and given that his firm has over a century of experience litigating the same, the $350 per hour rate is not entirely unreasonable. See, e.g., Evankavitch v. Green Tree Servicing, No. 3:12-cv-02564, 2014 WL 4437645, *2 (M.D. Pa. Sept. 9, 2014) (finding $315 per hour reasonable where the non-movant did not challenge the hourly rates); see Romeo v. Simm Associates, Inc., No. 3:15-cv-02136, 2016 WL 1070827, at *1 (M.D. Pa. Mar. 16, 2016) ($375.00 reasonable); Shaw v. Cumberland Truck Equip. Co., No. 1:09-cv-03598, 2012 WL 1130605, at *3 (M.D. Pa. Mar. 30, 2012) (acknowledging, in employment context, declaration according to which "more seasoned attorneys' fees [in the local market] range between $200.00 and $300.00 per hour"). But because $350 per hour is on the higher end of the billable rate in similar cases (as the above cited cases reflect), and because reducing the hourly billing rate has no impact on the Court's ultimate conclusion that the requested fee award is fair and reasonable, the Court will exercise its discretion to adjust the hourly rate down to $300. Multiplying the Court-adjusted hourly rate of $300 by 300 hours of attorney time results in a $90,000 lodestar amount.

Dividing the requested fees ($50,000) by the lodestar amount ($90,000) results in a

multiplier of less than one—more precisely, .55.[3]  It is generally understood that "[a] lodestar multiplier of less than one, like the lodestar multiplier here, reveals that the fee request constitutes only a fraction of the work that the attorneys billed and thus favors approval."  See Altnor v. Preferred Freezer Servs., Inc., 197 F. Supp. 3d 746, 767 (E.D. Pa. 2016) (internal quotation marks omitted) (quoting Carroll v. Stettler, No. 10-cv-02262, 2011 WL 5008361, at *8 (E.D.Pa. Oct. 19, 2011)).  Therefore, while the Court declines to approve the reasonableness of the hourly rate claimed by Plaintiffs' Counsel, applying the full percentage-of-recovery analysis, the Court concludes that the requested fee of $50,000 is reasonable.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant the joint motion to approve the Settlement Agreement.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[3]  Indeed, even if the Court reduced the hourly billable rate to $200, the lodestar would be $60,000, and the multiplier would be .66.